EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miguel A. Rosario Rosado<br><br>        Peticionario<br><br>             v.<br><br> Marvin Pagán Santiago<br><br>        Recurrido | Certiorari<br><br>2016 TSPR 176<br><br>196 DPR ____ |

Número del Caso: CC-2014-815


Fecha: 3 de agosto de 2016


Tribunal de Apelaciones:

    Región Judicial de Carolina, Panel VIII


 Abogada de la Parte Peticionaria:

    Lcda. Myriam E. Matos Bermúdez


 Abogado de la Parte Recurrida:

    Lcdo. Husmail Figueroa Ríos



Materia: Derecho de contratos - Validez de contrato de compraventa de vehículos de motor cuando no media el consentimiento del acreedor financiero, de acuerdo con la Ley para la Protección Vehicular, Ley Núm. 8 de 5 de agosto de 1987.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miguel A. Rosario Rosado

    Peticionario

      v.

Marvin Pagán Santiago

    Recurrido

Certiorari

CC-2014-0815

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García.

En San Juan, Puerto Rico, a 3 de agosto de 2016.

La resolución de este caso requiere que analicemos las disposiciones de la Ley para la Protección a la Propiedad Vehicular, Ley Núm. 8 del 5 de agosto de 1987, 9 LPRA sec. 3201, *et seq.*, en el contexto de una modalidad contractual que se observa con frecuencia en Puerto Rico. Nos referimos al contrato que se efectúa para vender o ceder un vehículo de motor sobre el que recae un gravamen de venta condicional, sin que medie el consentimiento del acreedor financiero. El Tribunal de Apelaciones resolvió que este tipo de contrato era ilegal, fundamentándose en ciertas disposiciones de esa ley que tipifican como delito enajenar un vehículo de motor sin el

consentimiento del acreedor financiero, para defraudarlo. Adelantamos que, en el contexto fáctico que atendemos, el foro apelativo intermedio incidió en su análisis por lo que revocamos la sentencia recurrida.

I

A continuación enunciamos los hechos pertinentes según el Tribunal de Primera Instancia los determinó como probados en su Sentencia.[1]

El Sr. Miguel A. Rosario Rosado (peticionario) era el dueño de un vehículo de motor marca Pontiac del año 2006 sujeto a un gravamen de venta condicional a favor de la entidad bancaria First Bank.[2] El 19 de diciembre de 2009, cuando quedaban por satisfacerse 27 pagos, el peticionario y el Sr. Marvin Pagán Santiago (recurrido) suscribieron un contrato que titularon "Acuerdo de Cesión de Derechos y Relevo de Responsabilidad".[3] Mediante el referido documento, el peticionario "cedió, vendió y traspasó todos sus derechos sobre el vehículo" y el recurrido se comprometió a asumir el pago de la deuda del préstamo sin incurrir en atrasos, entre otras obligaciones, hasta que

---

[1] Véase, Sentencia. Apéndice del recurso de certiorari, pág. 13.

[2] Aunque en los contratos de venta condicional el vendedor retiene un título formal de propiedad hasta que el bien se haya pagado en su totalidad, el comprador del bien es, en términos legales y prácticos, el dueño del mismo. Véase General Accident Ins. Co. v. E.L.A., 137 DPR 466, 473 esc. 2 (1994).

[3] Este documento no consta en el expediente por lo que hacemos referencia a sus cláusulas conforme a las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ninguna de las partes ha impugnado las determinaciones del foro primario relacionadas al contenido de dicho acuerdo. Ante ello, el hecho de que no se haya incluido en el apéndice del recurso no nos impide pasar juicio sobre la controversia que atendemos.

fuera vendido a una tercera persona.[4] Sin embargo, en agosto de 2010 First Bank le informó al peticionario que había reposeido el vehículo y que el pago del préstamo reflejaba atrasos. Eventualmente, dicha entidad bancaria dispuso del automóvil y le notificó como deuda vencida la suma de $10,741.39.

En consecuencia, el peticionario presentó el 28 de octubre de 2010 una demanda sobre daños y perjuicios e incumplimiento de contrato en contra del recurrido.[5] Solicitó el resarcimiento de los daños que le había causado el incumplimiento contractual, así como el pago de la cantidad que adeudaba a First Bank por el préstamo de auto. Luego de celebrar el juicio, el 8 de agosto de 2013 el Tribunal de Primera Instancia dictó sentencia y declaró con lugar la demanda.[6] En vista de ello, determinó que las partes habían suscrito un contrato válido y que el recurrido incumplió con lo pactado. Consecuentemente, le ordenó a Pagán Santiago que le pagara al peticionario la suma de $10,741.39 que este último adeudaba a First Bank

---

[4] Entre estas obligaciones el recurrido se comprometió a retener la posesión del vehículo hasta que lo vendiera y traspasara a una tercera persona, relevando al demandante de cualquier reclamación que surgiera por el uso y manejo del vehículo y del pago regular del préstamo. Es menester aclarar que **no estamos justipreciando** la validez o ineficacia de estas cláusulas puesto que ese asunto no estuvo ante la consideración de los foros judiciales inferiores.

[5] Véase, Demanda. Apéndice del recurso de *certiorari*, pág. 31.

[6] Notificada a las partes el 15 de agosto de 2013.

más $1,500 por honorarios de abogado y los intereses legales correspondientes.[7]

Inconforme con esa determinación, y luego de haber solicitado reconsideración sin éxito, el recurrido presentó un recurso de apelación ante Tribunal de Apelaciones el 4 de abril de 2014. En su escrito puntualizó la comisión del error siguiente:

> Erró el TPI al dictar Sentencia, sustentándose y fundamentándose en determinaciones de hechos basadas en prueba que no formó parte de la desglosada en el Informe de Conferencia Preliminar Entre Abogados sometidos con antelación al juicio, de los exhibits marcados y admitidos en la vista en su fondo del 15 de agosto de 2012. Todo lo anterior en crasa violación al debido proceso de ley y abusando de su discreción al *motus propio* [sic] solicitarle la misma a la abogada del demandante para su inclusión, y en crasa violación a las Reglas de Evidencia y las de Procedimiento Civil vigentes.[8]

---

[7] El Tribunal de Apelaciones, al realizar el recuento procesal del caso, consignó en su sentencia lo siguiente: "[e]xpresó el Juzgador [de primera instancia] que habiendo el apelante inobservado las obligaciones que asumió el apelado, resultaba procedente que respondiera frente a la entidad financiera". Véase Sentencia del Tribunal de Apelaciones a la pág. 4. Apéndice del recurso de *certiorari,* pág. 5. Dicha determinación es incorrecta puesto que el Tribunal de Primera Instancia no realizó tal señalamiento, pues lo que indicó en su dictamen fue que "la parte demandada viene obligad[a] a pagar al demandante la cantidad que este le adeuda al acreedor financiero". Sentencia del Tribunal de Primera Instancia, Id., pág. 63. Debe quedar claro que la relación contractual entre el peticionario Rosario Rosado y el acreedor financiero con quien suscribió un contrato de venta condicional no está en controversia en este caso. Lo que se está dilucidando es la posible responsabilidad del recurrido **frente al peticionario** por virtud del contrato de venta de auto que estos suscribieron. Dicha imprecisión en la sentencia del Tribunal de Apelaciones no debe crear confusión en cuanto a que el recurrido deba "responder" frente a la entidad financiera. Sin entrar a considerar ese asunto, que evidentemente no está ante nosotros, sabemos que el Código Civil de Puerto Rico señala en su Art. 1159 que "[l]a novación, que consiste en sustituirse un nuevo deudor en lugar del primitivo, puede hacerse sin conocimiento de éste, pero no sin el consentimiento del acreedor". 31 LPRA sec. 3243.

[8] Apelación. Apéndice del recurso de *certiorari*, pág. 25.

En específico, objetó que se admitiera en evidencia cierto documento expedido por First Bank que fue considerado por el foro primario para realizar sus determinaciones de hechos.[9] Su contención era que ni de las alegaciones de la demanda ni de la prueba que se ponderó en el juicio surgía que existiera una deuda de $10,741.39.

Examinado el recurso, el foro apelativo intermedio emitió su sentencia el 15 de agosto de 2014 y revocó el dictamen apelado.[10] Empero, al hacerlo no justipreció el planteamiento del recurrido referente a la prueba documental. Es decir, no atendió los errores esgrimidos en el recurso de apelación. Contrario a la apreciación del Tribunal de Primera Instancia, coligió que el contrato que suscribieron las partes era nulo por constituir dicho negocio un convenio ilegal por razón de que First Bank nunca consintió a que se enajenara el vehículo de motor. En su sentencia, hizo referencia a los incisos (7) y (8) del Art. 18 de la Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3217 (7) y (8), (Art. 18), que en síntesis, tipifican como conducta delictiva traspasar o

---

[9] Estas determinaciones de hechos leen como sigue:

7. Para agosto de 2010, el demandante fue notificado por el First Bank que el vehículo antes descrito se encontraba cuatro meses en atraso. Posteriormente se le notificó que el vehículo había sido ocupado o reposeído por el Banco.

8. Posteriormente el acreedor financiero dispuso del vehículo por la cantidad de $4,100 en el curso ordinario de este tipo de negocio. Luego de acreditar el valor realizado por el vehículo reposeído al balance adeudado, el demandante adeuda la deficiencia por la suma de $10,741.39 al First Bank, quien ha reclamado el pago. Véase, Sentencia, Id., pág. 14.

[10] Véase, Sentencia. Id., pág. 2.

vender un vehículo de motor sin el consentimiento del acreedor financiero y con el propósito de defraudarlo.

En desacuerdo con ese proceder, el peticionario presentó ante esta Curia el *certiorari* de título y señaló los errores siguientes:

> 1. Erró el TA al revocar la sentencia dictada por el TPI a base de la aplicación retroactiva de una ley que no estaba en vigencia a la fecha de los hechos.
>
> 2. Erró el TA al revocar la sentencia dictada por el TPI a base de la aplicación retroactiva de una ley, lo que violenta la garantía constitucional contra el menoscabo de las obligaciones contractuales.
>
> 3. Erró el TA al revocar la sentencia dictada por el TPI a base de la aplicación retroactiva de una ley, en contravención con lo dispuesto en el artículo.[11]

El peticionario aduce que los errores planteados se refieren al inciso (8) del Art. 18, _supra_, precepto que se añadió a ese estatuto mediante la Ley Núm. 130-2010. A su vez, afirma que como el contrato se suscribió en el 2009, arguye que el Tribunal de Apelaciones estaba impedido de aplicar esa disposición a los hechos de este caso. Por su parte, el recurrido sostiene que independientemente de que se hubiese incurrido en ese error, el inciso (7) del precitado Art. 18 estaba vigente al momento en que se suscribió el contrato y que el mismo también prohibía acuerdos de esa naturaleza.

El 12 de diciembre de 2014 expedimos el auto solicitado. Con el beneficio de los alegatos de ambas

---

[11] Petición de *certiorari*, pág. 5.

partes, procedemos a exponer el marco legal pertinente al cuadro fáctico que nos ocupa.

II

Esta controversia exige que revisitemos doctrinas básicas de nuestro derecho contractual y examinemos el alcance del articulado de las disposiciones de la Ley de Protección a la Propiedad Vehicular, supra. Procedemos con el análisis del derecho aplicable.

## A. Ineficacia de los contratos y la causa ilícita

Existe un contrato cuando concurren el consentimiento de los contratantes, un objeto cierto y una causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. Una vez establecido un contrato válido, se convierte en ley entre las partes y quedan obligadas a cumplir con lo pactado. Art. 1044 del Código Civil de Puerto Rico, 31 LPRA sec. 3372. Véase, Oriental Bank v. Perapi et al., 192 DPR 7 (2014); PRFS v. Promoexport, 187 DPR 42, 52 (2012). Es un axioma en nuestro derecho civil que los contratantes pueden establecer todas aquellas cláusulas que tengan por conveniente siempre y cuando no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372. Esto está en concordancia con el Art. 4 del Código Civil que categoriza como nulos los actos que se ejecutan contra lo dispuesto en la ley. 31 LPRA sec. 4.

En algunas instancias, aun cuando aparenta existir un vínculo contractual, se presentan situaciones que demuestran que el contrato que hasta ese momento se presumía válido, en realidad, es ineficaz.[12] Dependiendo de la circunstancia específica que provoca esa ineficacia, el contrato podría adolecer de nulidad relativa o de nulidad absoluta o radical, también conocida como la nulidad *ab initio.* Véase, O. Soler Bonnin, Obligaciones y contratos: manual para el estudio de la teoría general de las obligaciones y del contrato en el derecho civil puertorriqueño, San Juan, Ed. Situm, 2014, pág. 223. Este tipo de defecto -la nulidad absoluta- se caracteriza en que el contrato, siendo nulo, es inexistente en el orden jurídico y no produce ningún efecto. Véase, Col. Int'l Sek P.R., Inc. v. Escribá, 135 DPR 647, 666 (1994).

Un ejemplo de este tipo de nulidad es cuando lo pactado por las partes o el acuerdo en sí mismo está expresamente prohibido por la ley. Diez Picazo nos explica que en estos casos el contrato, *considerado como un todo,* contraviene una disposición de ley, por lo que la nulidad vendrá dada por el carácter de *contrato prohibido.* L. Diez Picazo, Fundamentos del Derecho Civil Patrimonial:

---

[12] Existen una variedad de razones por las que los contratos pueden resultar ineficaces, por lo que solo se discutirán las pertinentes a esta controversia. Al respecto véase, O. Soler Bonnin, Obligaciones y contratos: manual para el estudio de la teoría general de las obligaciones y del contrato en el derecho civil puertorriqueño, San Juan, Ed. Situm, 2014, pág. 223. Como bien señala la Prof. García Cárdenas, cada una de las razones de la ineficacia del contrato tiene una razón o causa diferente. M.E. García Cárdenas, San Juan, Derecho de obligaciones y contratos, Ed. MJ Editores, 2012, pág. 479.

*Introducción a la teoría del contrato*, Ed. Thomson Civitas, 2007, Vol. 1, pág. 282. En otras palabras, sencillamente no puede existir, pues choca con una prohibición legal quedando fuera de los límites de la autonomía privada. Id. Esto, sin importar el tipo de contrato del que se trate y de la importancia que revista para las partes contratantes. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 456 (2014).

Así también, un vínculo contractual puede resultar nulo *ab initio* si carece de alguno de los elementos necesarios para su constitución, entiéndase, el consentimiento, el objeto o la causa. Véase, Soler Bonnin, *op cit.*, pág. 223. Aunque en estos casos el contrato también es inexistente, se diferencia de cuando es nulo por estar prohibido por ley. Pues en el primer caso, el contrato es permitido por el ordenamiento jurídico, pero es ineficaz por la ausencia o defecto en uno de los requisitos que eran necesarios para que naciera a la vida jurídica.

Como ya mencionamos, entre los elementos esenciales de toda relación contractual se encuentra *la causa*. El Código Civil dispone categóricamente que "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno", y que es ilícita la causa "cuando se opone a las leyes o a la moral". Art. 1227 del Código Civil, 31 L.P.R.A. sec. 3432. Véase, también, *Piovanetti v. S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745 (2010). En *Col. Int'l*

Sek P.R., Inc. v. Escribá, supra, reiteramos el significado de *causa ilícita* que habíamos adoptado en Dennis, Metro Invs. v. City Fed. Savs.[13]. Allí expresamos que hay dos tipos de causa ilícita: "la causa ilegal, que se opone a las leyes, y la causa inmoral, llamada también 'causa torpe', que se opone a la moral y las buenas costumbres". (Énfasis suprimido).[14]

Así por ejemplo, en el precitado caso de Col. Int'l Sek P.R., Inc. v. Escribá, pautamos que la causa del contrato de corretaje que estaba en controversia en ese caso no era lícita porque era contraria a la Ley Núm. 139 de 14 de junio de 1980 que prohibía ejercer la profesión de corredor de bienes raíces sin la debida licencia, constituyendo dicha práctica un delito menos grave. Más recientemente, en Piovanetti v. S.L.G. Touma, S.L.G. Tirado, supra, pautamos que otro contrato de corretaje de préstamo tenía causa ilícita porque quien lo otorgó no tenía la licencia requerida por la Ley Núm. 214 de 14 de octubre de 1995 que regula el negocio de intermediación financiera.

Ahora bien, es de notar que el Código Civil de Puerto Rico no provee una definición general de la figura de la causa, más bien, nos refiere a lo que esta debe corresponder de acuerdo al tipo contractual del que se trate. A esos efectos, el Art. 1226 señala que en los

---

[13] 121 DPR 197, 217 (1988).
[14] Col. Int'l Sek P.R., Inc. v. Escribá, 135 DPR 647, 665 (1994) (Citando a Díez-Picazo).

contratos onerosos se entiende por causa la prestación o promesa de una cosa o servicio. 31 LPRA sec. 3431. Añade que en los remuneratorios, la causa corresponde al servicio o beneficio que se remunera y en los de pura beneficencia la mera liberalidad. Id. Como nos comenta la profesora García Cardenas, "la causa se ha equiparado, en muchas ocasiones, a la contestación de la interrogante, ¿por qué me obligué?" M.E. García Cárdenas, Derecho de obligaciones y contratos, San Juan, Ed. MJ Editores, 2012, pág. 419.

La propia doctrina reconoce que la contestación a esa interrogante, es decir, *la causa*, es una figura problemática ya que su enfoque puede ser tanto objetivo como subjetivo, provocando diferencias conceptuales al respecto.[15] Cuando consideramos la causa en su vertiente objetiva la motivación interna que tuvieron los contratantes para efectuar el contrato tiene poca relevancia. García Cárdenas, op cit., pág. 419. Sin embargo, también se ha reconocido que un negocio jurídico puede afectarse por la intención específica de las partes cuando el móvil determinante del contrato atenta contra la ley. Id., pág. 420. De acuerdo a Diez Picazo, el problema de la teoría objetiva es que no explica cómo un negocio típico, con una función económica y social típica, también

---

[15] Así por ejemplo, para el comentarista Manuel Medina De Lemus, la idea de la causa es una de las cuestiones más complejas de la doctrina civilista. A su juicio, no debe hablarse de la causa del contrato si no que deben distinguirse diversos tipos de contratos, cada uno con su causalidad específica. M. Medina De Lemus, Derecho civil: obligaciones y contratos, Ed. Dilex SL, Vol. 1, T.2, 2004, pág. 305.

puede quedar afectado por el propósito o la intención de las partes. Diez Picazo, op cit., pág. 267. Este autor lo explica de la forma siguiente:

> La función económico-social no actúa como causa. Lo único que puede ser, se piensa, causa del negocio es el intento o la voluntad de las partes de obtener esta función económico-social. Esto explica también que el intento práctico de las partes tenga en muchas ocasiones relevancia jurídica y que esta relevancia jurídica del intento práctico, del resultado empírico perseguido, no pueda encauzarse a través de la idea de la causa, entendida con arreglo a una concepción objetivista. Se hace, pues, **necesario valorar las motivaciones**, sobre todo las motivaciones comunes a ambas partes; y esta valoración solo encuentra su adecuado cauce a través de la figura de la causa. Es la causa que permite tildar de nulo a un negocio inmoral o ilícito. (Énfasis suplido).[16]

Por su parte, la profesora Soler Bonnin opina que una de las funciones que la doctrina le atribuye a la causa del contrato es servir de control social de la autonomía privada. Soler Bonnin, op cit., pág. 184.

Lo mencionado anteriormente es cónsono con lo que ya desde Reyes v. Jusino[17] este Tribunal había establecido a los efectos de que el enfoque de la causa no puede limitarse a la vertiente objetiva que visualiza sólo el contenido de las contraprestaciones porque "los motivos o móviles que indujeron a las partes a contratar son elementos extrajurídicos que en principio pueden ponderarse en la consideración de la ilicitud de la causa" cuando existan razones "poderosas" que lo justifiquen.

---

[16] Id.
[17] 116 DPR 275, 282 (1985).

En consecuencia, es posible aplicar la idea de causa ilícita en los supuestos en que la ilicitud de un contrato *proviene de la finalidad que las partes proponen alcanzar con él.*[18] Por ejemplo, cuando se realizan contratos en fraude de los derechos de un tercero, en daño a un tercero, o en fraude de acreedores o herederos, por mencionar algunas instancias. Véase, Dennis, Metro Invs v. City Fed. Savs, supra, a las págs. 216-217; Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 185-186 (1985). Véase además, Soler Bonnin, op cit., pág. 185; Diez Picazo, op cit., pág. 168. De manera que, según lo resume la profesora García Cárdenas, como norma general, en nuestro ordenamiento, rige la teoría objetiva de la causa pero cuando existan indicios de una presunta causa ilícita, procede evaluar las intenciones de las partes. García Cárdenas, op cit., pág. 421.

Hay que destacar que la determinación sobre la existencia de la causa y su licitud son elementos que deben concurrir en el origen o la perfección del contrato. Soler Bonnin, op cit., pág. 187. También, ha de tenerse en cuenta que la causa en un contrato se presume lícita. Claramente el Art. 1229 del Código Civil, 31 LPRA sec. 3434, establece que "aunque la causa no se exprese en el contrato, se presume que existe y que es lícita mientras

---

[18] En Col. Int'l Sek P.R., Inc. v. Escribá, supra, pág. 665, citamos con aprobación a Diez Picazo para exponer que cabe aplicar la idea de causa ilícita cuando un contrato es ilícito a causa de la finalidad propuesta por las partes. Véase también, Soler Bonnin, op cit., pág. 185; Diez Picazo, op cit. pág. 283.

el deudor no pruebe lo contrario". Así, en Sánchez Rodríguez v. López Jiménez, supra, pág. 185, señalamos que la ilicitud de la causa es un problema jurídico que debe dirimirse por la prueba, que incumbe demostrar a quien lo invoque y cuya apreciación compete a los tribunales. Una vez se determina la ilicitud de la causa, no resta más que declarar que el contrato es nulo e inexistente. Piovanetti v. S.L.G. Touma, S.L.G. Tirado, supra; Col. Int'l Sek P.R., Inc. v. Escribá, supra; Sánchez Rodríguez v. López Jiménez, supra.

Cuando este tipo de nulidad ocurre, el Art. 1277 del Código Civil de Puerto Rico, 31 LPRA sec. 3516, expresa lo que procede en caso de que la ilicitud constituya un delito o falta. Si el hecho constituye un delito o una falta común a ambos contratantes, estos carecen de cualquier tipo de acción entre sí; si uno de los contratantes no tuvo culpa podrá reclamar lo que dio y no estará obligado a cumplir lo que prometió. Id. Diez-Picazo, al discutir el Art. 1.305 del Código Civil español, equivalente al Art. 1257, supra, nos explica lo siguiente:

> El hecho de que el Art. 1.305 hable de delito impone la necesaria calificación del supuesto de hecho dentro de las categorías comprendidas en las leyes penales (v. gr: soborno, asociación para delinquir, etc.). **No se requiere que la calificación de los hechos como delito haya sido previamente realizada por la jurisdicción penal,** no que tal clasificación tenga valor de cosa juzgada para que el precepto civil pueda entrar en juego. La puesta en juego del

> Art. 1.305 puede ser llevada a cabo por los tribunales civiles **aun a falta de actuaciones penales**. (Énfasis nuestro). Diez Picazo, op cit., pág. 583.

Siendo así, nada impide que se pase juicio sobre la presunta ilicitud de una causa contractual partiendo de disposiciones de la ley penal, aun cuando no haya mediado una denuncia o acusación al respecto.

**B. Ley de Protección a la Propiedad Vehicular**

La Ley de Protección a la Propiedad Vehicular, supra, se promulgó para establecer un registro e inventario de los vehículos de motor dentro de la jurisdicción de Puerto Rico y disponer mecanismos para la investigación de la procedencia y titularidad de los mismos. Véase, Exposición de Motivos de la Ley Núm. 8 de 1987. 1987 Leyes de Puerto Rico 654. El propósito fue prevenir el crimen asociado a la actividad ilícita de apropiaciones ilegales de vehículos de motor, especialmente los que estaban ligados a alguna obligación financiera. Id. La complejidad de ese tipo de operaciones, particularmente realizado por el crimen organizado, hacía imprescindible facilitar al agente del orden público el investigar ese tipo de comercio ilegal. Id.

En su Art. 18, supra, esta legislación enumera ciertas instancias en las que se comete el delito de apropiación ilegal de un vehículo de motor. El Tribunal de Apelaciones prestó énfasis a los incisos (7) y (8) del mismo, por lo que discutiremos ambos preceptos. De acuerdo

al inciso (7) del Art. 18, <u>supra</u>, se entenderá como apropiación ilegal que una persona:

> Venda, compre o en alguna forma enajene o adquiera el vehículo **con la intención de defraudar a la compañía financiera o al comprador subsiguiente y liberarse de la deuda o del cumplimiento de las obligaciones existentes** o cuando desmantele o permita que otra persona desmantele un vehículo que esté sujeto a un contrato de venta condicional, de arrendamiento financiero, o a algún otro tipo de préstamo con garantía, sin el consentimiento escrito del vendedor condicional, del acreedor o de la institución financiera. (Énfasis nuestro). 9 LPRA sec. 3217 (7).

Esta disposición se añadió a ese estatuto mediante la Ley Núm. 149 de 4 de agosto de 1988. De la Exposición de Motivos de esa ley se desprende que el legislador quiso proteger el interés propietario y económico de las instituciones financieras sobre los vehículos que financian a través de distintos tipos de contratación. 1988 Leyes de Puerto Rico 685. La Asamblea Legislativa expresó que:

> …este interés queda frustrado cuando estos vehículos de motor son vendidos o traspasados a terceros adquirentes **con la intención de defraudar a las compañías financieras o a los acreedores sin el consentimiento de éstos** y dejando de cumplir con el pago de la deuda o de las obligaciones existentes a cambio de sustanciales beneficios económicos dentro del trasiego ilegal de vehículos de motor. De esta forma, se menoscaba el interés propietario de los acreedores, se engaña a futuros adquirentes de dichos vehículos y se promueve la apropiación ilegal y otras actividades delictivas. En lo que se refiere al desmantelamiento de un vehículo de motor sujeto a estos tipos de contratos, basta que el mismo se realice sin el consentimiento de la entidad financiera o acreedor para penalizarlo, pues ello produce la desaparición del vehículo como objeto cierto materia del contrato. (Énfasis nuestro). Id.

Así pues, el legislador expresó que esa medida tipificaba como delito las enajenaciones de vehículos que tuvieran el propósito de **defraudar** y librarse del pago de la deuda, esto, como una medida **para prevenir y evitar actividad ilícita**. Id. En el Informe Conjunto del P. del S. 1431,[19] que dio paso a la promulgación de esta ley se especificó que esa enmienda proveería una protección adicional "contra aquellos actos ilegales perpetuados por personas inescrupulosas **que pretendan burlar la buena fe de sus acreedores, al disponer, sin el previo consentimiento de estos**, de un vehículo de motor sujeto a alguna obligación contractual". (Énfasis nuestro).[20]

Posteriormente, con la aprobación de la Ley 130-2010, se añadió el inciso (8) al Art. 18, _supra_, que dispone como sigue:

> Toda persona que actuando, como intermediario, compre, reciba, venda o enajene un vehículo de motor, sujeto a un financiamiento, con la intención de venderlo o cederlo, sin que medie la anuencia por escrito del vendedor condicional, del acreedor o la entidad financiera que financió el vehículo de motor al comprador original, incurrirá en delito grave de tercer grado y se le impondrá una multa no menor de cinco mil dólares ($5,000.00). El tribunal podrá imponer la pena de restitución, además de las penas aquí impuestas, a su discreción. 9 LPRA sec. 3217 (8).

Mediante esta enmienda a la Ley de Protección a la Propiedad Vehicular el legislador pretende castigar a esa persona, también conocida como intermediario, corredor o

---

[19] Informe Conjunto del P. de. S. 1431 de 14 de abril de 1988.
[20] Id., pág. 2.

"broker," por las actuaciones que "promueve[n] un esquema de fraude en la compraventa de cuentas de financiamiento para vehículos de motor".[21]

Pasemos a aplicar el derecho a los hechos de este caso.

### III

Al examinar la sentencia apelada advertimos que el Tribunal de Apelaciones mencionó los incisos (7) y (8) del Art. 18, _supra_, en la discusión que desembocó en la declaración de nulidad del contrato. Esto, sin aclarar bajo cuál de estos preceptos específicamente es que arribó a esa conclusión, pues el dictamen judicial se limitó a enunciar que el acuerdo era nulo meramente porque no medió _el consentimiento de First Bank_, es decir, del acreedor financiero. En vista de lo anterior, es imperativo discutir los errores planteados por el peticionario, que específicamente se refieren al inciso (8) del Art. 18, _supra_, para luego determinar si también procedía decretar la nulidad del acuerdo bajo el mandato del inciso (7).

Como apuntamos, el peticionario presenta en su recurso tres errores que están íntimamente relacionados y en esencia lo que plantean es que el foro apelativo intermedio incidió al aplicar una ley retroactivamente, como fundamento para declarar la nulidad de su contrato. En su discusión se refiere al inciso (8) del Art. 18, _supra_, que entró en vigor luego de su aprobación en 2010,

---

[21] Exposición de Motivos de la Ley 130-2010.

fecha posterior a que se suscribiera el contrato en controversia en 2009. Al ponderar tal hecho, es forzoso concluir que le asiste la razón al peticionario. Cabe puntualizar que la Ley Núm. 130-2010, que añadió el inciso (8) a la Ley de Protección a la Propiedad Vehicular, no contiene ninguna disposición en su texto que sugiera que su aplicación es retroactiva. Lo que era de esperarse, ya que se trata de una legislación de carácter penal que tipifica como apropiación ilegal conductas que hasta ese momento no estaban catalogadas como tal y siendo así, por prohibición constitucional, no podía aprobarse para que aplicara con carácter retroactivo.[22] Ante ello, no cabe discutir si se cumplían los elementos de hecho necesarios para que se declarara la nulidad del contrato fundamentándose en las disposiciones de ese precepto. El Tribunal de Apelaciones erró en tomar en consideración el inciso (8) del Art. 18, supra, para analizar los hechos que dieron origen a esta controversia. Por otro lado, es necesario que pasemos a discutir lo referente al inciso (7), que sí estaba vigente al momento de los hechos acaecidos.

Según acotamos, el foro apelativo intermedio enfatizó que como el acreedor financiero no prestó su

---

[22] La Constitución del Estado Libre Asociado de Puerto Rico establece que "[n]o se aprobarán leyes ex post facto…" Art. II, Sec. 12, Const. ELA, L.P.R.A., Tomo I. En Estados Unidos y en Puerto Rico, la protección ha surgido para responder a dos objetivos. Primero, "se intenta garantizar que los ciudadanos tengan un aviso adecuado acerca de la conducta prohibida mediante leyes penales". Segundo, "se intenta evitar una aplicación arbitraria y vengativa de los estatutos criminales". L. Chiesa Aponte, Derecho Penal Sustantivo, Luis E. Chiesa Aponte, Publicaciones JTS, 2007, págs. 20-21.

consentimiento para que se otorgara el contrato, este automáticamente era ilegal y por ende, nulo. En otras palabras, estimó que la falta del consentimiento del acreedor le imprimió *ipso facto* un manto de ilegalidad al acuerdo. Basta hacer referencia a lo que el legislador expresó en la Exposición de Motivos de la Ley Núm. 149, supra, para concluir que el Tribunal de Apelaciones incidió en su apreciación. La Asamblea Legislativa señaló en cuanto al inciso (7) que:

> esta tipificación **no incluye aquellas transacciones de buena fe que cotidianamente llevan a cabo los consumidores** para formalizar traspasos **legítimos** de los vehículos de motor que éstos adquieren **aun cuando no siempre les sea posible obtener el traspaso y el consentimiento de la institución financiera**. (Énfasis nuestro).[23]

Como vemos, el legislador no prohibió absolutamente este tipo de contrato cuando no contara el consentimiento del acreedor financiero, siempre y cuando las partes obrasen de buena fe. Al ser así, no penalizó categóricamente que se celebrara ese tipo de acuerdo si estaba ausente el propósito de defraudar. Por lo tanto, el contrato de "cesión de derecho y relevo de responsabilidad" suscrito por el peticionario y el recurrido no es uno que de por sí esté prohibido por la ley, en lo que respecta a este estatuto. Es decir, la mera ausencia de tal consentimiento no es suficiente para estimarlo como ilegal. Consecuentemente, un contrato como

---

[23] Exposición de Motivos de la Ley Núm. 149, supra, pág. 685.

el que está en controversia será enteramente válido entre las partes siempre y cuando no se perfeccione con el fin ilícito que la ley pretende evitar.

En su parte pertinente, el inciso (7) del Art. 18, supra, define como apropiación ilegal cualquier tipo de contratación que involucre la enajenación de un vehículo sujeto a algún gravamen por una obligación financiera si se realiza con el propósito de "**defraudar** a la compañía financiera o al comprador subsiguiente y librarse de la deuda o del cumplimiento de las obligaciones existentes". Como ya discutimos, la causa en los contratos responde a la pregunta de por qué se realizó el negocio jurídico y hemos validado la teoría subjetivista que promueve hurgar las verdaderas motivaciones e intenciones de las partes a los fines de evaluar la posible ilicitud de la causa contractual.

El contrato suscrito por el peticionario podría contener una causa ilícita si el propósito por el cual se efectuó figura dentro de las acciones y conductas proscritas por el legislador mediante la Ley de Protección a la Propiedad Vehicular, supra. Es decir, si se llevó a cabo para defraudar al acreedor financiero o comprador subsiguiente. Sin embargo, el expediente de este caso no nos permite realizar ese análisis, ya que sobre esto no se desfiló prueba ante el Tribunal de Primera Instancia y tampoco surge  de las determinaciones de hechos realizadas por ese foro. Recordemos que la causa en los contratos va

acompañada de una presunción de validez que únicamente puede derrotarse mediante prueba.

Así pues, resolvemos que el contrato en controversia no estaba prohibido por la Ley para la Protección a la Propiedad Vehicular, supra, y tampoco se demostró que su causa fuese ilícita. En consecuencia, incidió el Tribunal de Apelaciones al revocar la Sentencia del Tribunal de Primera Instancia fundamentándose en que el convenio de las partes era nulo. En primer lugar, el hecho de que el acreedor financiero no prestara su consentimiento para que se efectuara el contrato entre el peticionario y el recurrido, en ausencia de una determinación de que la causa del contrato tenía el propósito de defraudar, no constituye fundamento para que se declare ilegal. La intención del legislador no fue excluir del tráfico jurídico las transacciones de buena fe que cotidianamente llevan a cabo los consumidores. Segundo, no estamos en posición de evaluar si ese contrato, no prohibido por la ley, adolece de causa ilícita -lo que sí hubiese dado lugar a la nulidad- pues el foro primario no consideró prueba referente a esto.

IV

Por los fundamentos que anteceden, se revoca la sentencia emitida por el Tribunal de Apelaciones y se

devuelve el caso a ese foro para que evalúe los errores que expuso el recurrido en su escrito de Apelación.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miguel A. Rosario Rosado
      Peticionario

          v.                                    Certiorari

Marvin Pagán Santiago
        Recurrido                   CC-2014-0815


SENTENCIA

En San Juan, Puerto Rico, a 3 de agosto de 2016.

Por los fundamentos que anteceden, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso a ese foro para que evalúe los errores que expuso el recurrido, Marvin Pagán Santiago, en su escrito de Apelación.

Así lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez concurre con las siguientes expresiones: "La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado por entender que el Tribunal de Apelaciones erró al aplicar de manera retroactiva las disposiciones del inciso (8) del Artículo 18 de la *Ley para la protección de la propiedad vehicular,* 9 L.P.R.A. sec. 3217, para concluir que el contrato era nulo. En vista de ello, una exposición sobre la teoría general de los contratos y el concepto de causa contractual resulta superflua para la resolución de esta controversia".


                    Juan E. Dávila Rivera
                Secretario del Tribunal Supremo