Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ELIZABETH ST. JOHN FELDER, KEVIN DOUGLAS FELDER Y SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR KEVIN DOUGLAS FELDER Y ELIZABETH ST. JOHN FELDER <br><br> Recurridos <br><br> V. <br><br> AGENTE RESIDENTE DESCONOCIDO, AGENTE RESIDENTE DCI-AM LLC, ASEGURADORA A, B, C, ANTHONY RODRIGUEZ, ASEGURADORA D, E, F, ASEGURADORA H, I, J, DCI-AM ADMINISTRATION & MAINTENANCE O DCI-AM, LLC, ASEGURADORAS O, P, Q, R, ASEGURADORA K, L, M, CORPORACION DE NOMBRE DESCONOCIDO, FULANA DE TAL, LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR ANTHONY S CONIGLIARO Y FULANA DE TAL, JOHN DOE E, F, G, JUNTA DE DIRECTORES DE BEACH VILLA POOL ASOCIATION C/O DCI-AM, LLC, NATALIE ORTIZ LAVIENA, RAFAEL PÉREZ ACEVEDO, ANTHONY S. CONIGLIARO Y BEACH VILLA POOL ASSOCIATION C/O DCI-AM, LLC <br><br> Peticionarios | TA2025CE00047 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao <br><br><br> Caso Núm.: HU2021CV00693 <br><br><br> Sobre: Incumplimiento de Contrato, Daños |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparecen Beach Village Pool Association Corp. (BVPA o Asociación), su Junta de Directores y su presidente, el señor Anthony Conigliaro (peticionarios) y solicitan que revisemos una *Resolución* emitida el 28 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI).[1] En esta, el TPI declaró *No Ha Lugar* la solicitud de sentencia sumaria que presentaron los peticionarios.

---

[1] Entrada 150 del caso HU2021CV00693 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 29 de mayo de 2025.

Por las razones que exponemos a continuación, adelantamos la expedición del auto de *certiorari* y la revocación del dictamen recurrido.

## I.

Este caso se originó el 2 de julio de 2021,[2] cuando el señor Kevin Douglas Felder, la señora Elizabeth St. John Felder y la Sociedad Legal de Bienes Gananciales compuesta por ambos (matrimonio Felder o recurridos) presentaron una *Demanda* por incumplimiento contractual, daños y perjuicios, lucro cesante, angustias mentales y daños morales en contra de BVPA, su Junta de Directores y el señor Conigliaro, entre otros. En la misma, expusieron que eran dueños de tres (3) propiedades en el Condominio Beach Villa de Palmas del Mar y que, como titulares, adquirieron una membresía de BVPA que daba acceso a la piscina. No obstante, arguyeron que los peticionarios le cancelaron su membresía por falta de pago, pese a sus intentos de saldar la deuda. Adujeron que la cancelación fue arbitraria y contraria a sus normas reglamentarias, lo que les ocasionó daños.

Tras varios trámites procesales, el 30 de noviembre de 2023, BVPA, su Junta de Directores y su presidente, el señor Anthony Conigliaro presentaron una *Moción Solicitando Sentencia Sumaria.*[3] Sostuvieron que en este caso no existía controversia real sobre los hechos materiales, al argumentar que el matrimonio Felder incumplió con el pago de la cuota en la fecha exigida, por lo que fue removido de la membresía en BVPA sin vista previa, según dispuesto en los *By-Laws* de la Asociación. Alegaron que la única controversia era si la Junta podía suspender, por falta de pago de la cuota, los privilegios de los apartamentos de los recurridos y si dicha suspensión podía efectuarse sin la celebración de una vista previa.

---

[2] Entrada 1 en SUMAC.
[3] Entrada 108 en SUMAC.

El 7 de junio de 2024, los recurridos presentaron una *Moción en Oposición a Moción Solicitando Sentencia Sumaria.*[4] En esta alegaron que existían controversias sustanciales de hechos materiales que requerían un juicio plenario. A saber, negaron recibir la notificación de la cuota de 2020 en diciembre de 2019 e indicaron que la factura se envió tardíamente en mayo de 2020, sin fecha de vencimiento ni recargos. Argumentaron que intentaron pagar la membresía en múltiples ocasiones y que BVPA se negó a aceptar el pago, incluso cuando otorgó instrucciones internas para no depositar el cheque entregado. Afirmaron que la cancelación de la membresía ocurrió después de que se depositara el cheque en el buzón del administrador de BVPA, DCI-AM, LLC (DCI). Asimismo, alegaron que contrario a lo expuesto por los peticionarios, previo al 26 de junio de 2020, el señor Felder solicitó la reinstalación de la membresía, pero que DCI contestó que debía remitir un nuevo cheque, ya que el enviado no sería aceptado. Al respecto, plantearon que la Junta de Directores no siguió su propio reglamento ni existió prueba de votación unánime para denegar su solicitud de reinstalación.

El 28 de mayo de 2025, el TPI emitió una *Resolución.*[5] En esta, formuló las siguientes determinaciones de hechos:

1. Los demandantes eran propietarios y titulares de tres (3) apartamentos en el Condominio Beach Villa Condominium Regime I y III del Proyecto Palmas del Mar, ubicados en el Municipio de Humacao.
2. Uno (1) de los apartamentos era ocupado por los demandantes, y los dos (2) restantes, eran alquilados para vacaciones, también conocidos como "rentals" en distintas plataformas como "Airbnb" y "Vrbo".
3. El Reglamento o ["*By-Laws*"] del BVPA establece que las cuotas se pagarán por adelantado el primer día de enero de cada año fiscal y que las cuotas de un nuevo miembro serán prorrateadas desde el día en que dicho miembro sea elegido como miembro por el resto del año fiscal de la Corporación.
4. Generalmente, la factura para el pago de la membresía se enviaba entre los meses de diciembre a enero para el año entrante. Por ejemplo, la factura correspondiente al año

---

[4] Entrada 134 en SUMAC.
[5] Entrada 150 en SUMAC. Notificada el 29 de mayo de 2025.

2019 se enviaba entre los meses de diciembre de 2018 a enero de 2019 para la membresía del año 2019.

5. El 17 de junio de 2020, el Sr. Felder recibió una carta con fecha del 15 de junio de 2020 a su correo electrónico, de parte de la Sra. Natalie Ortiz Laviena, entonces administradora de DCI, indicándole que la membresía de la BVPA correspondiente a las Villas 116 y 162, sus derechos y privilegios habían sido cancelados por falta de pago.

6. Los demandantes solicitaron la reinstalación de la membresía.

7. La solicitud de reinstalación de membresía fue denegada mediante misiva fechada 26 de junio de 2020.

No obstante, determinó que los siguientes asuntos estaban en controversia:

1. Si el memorando fechado 4 de diciembre de 2019, de parte de BVPA a sus miembros, le fue notificado a los demandantes.

2. Si el referido memorando le fue notificado, la fecha de la notificación de dicho memorando.

3. Si el Sr. Felder acudió a las oficinas de DCI para efectuar el pago previo a junio de 2020 y [cuáles] gestiones adicionales, si algunas, llevó a cabo previo a tal fecha para efectuar el pago de la membresía.

4. Los hechos relativos al alegado depósito del cheque en el buzón de Beach Pool Villa Association.

5. Si ocurrieron conversaciones mediante texto o correo electrónico entre el Sr. Felder y los codemandados en torno al pago de las cuotas, y de haberlas, la fecha y el contenido de dichas comunicaciones.

6. Las fechas y contenido de las comunicaciones entre los demandantes y los codemandados entre enero a junio 2020 en torno al pago de las cuotas.

7. La fecha en la cual los demandantes solicitaron la reinstalación de la membresía.

8. Si la denegatoria de la reinstalación de la membresía se llevó a cabo en cumplimiento con los [*By-Laws*] de BVPA.

Según el Foro Primario, existía controversia en torno al presunto incumplimiento de BVPA con sus *By-Laws* así como si ello ocasionó daño al matrimonio Felder. Ante ello, declaró No Ha Lugar la solicitud de sentencia sumaria de los peticionarios por entender que existía controversia de hechos esenciales y medulares.

Inconformes, el 27 de junio de 2025, los peticionarios presentaron este recurso de *certiorari*, en el que señalaron que:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA DE LAS PARTES DEMANDADAS BVPA CORP., JUNTA DE DIRECTORES DE BVPA CORP. Y ANTHONY

CONIGLIARO FUNDAMENTÁNDOSE EN QUE EXISTE CONTROVERSIA EN TORNO A HECHOS ESENCIALES Y MEDULARES: (A) EN RELACIÓN CON EL ALEGADO INCUMPLIMIENTO DE PARTE DE BVPA CON SUS PROPIOS [*BY-LAWS*]; (B) SI BVPA O DCI LES NOTIFICARON A LOS DEMANDANTES SOBRE LA FACTURA Y EL MEMORANDO DEL 4 DE DICIEMBRE DE 2020 Y SI TAL MISIVA FUE RECIBIDA POR LOS DEMANDANTES; (C) SI LOS DEMANDANTES INCUMPLIERON CON LA REGLAMENTACIÓN APLICABLE EN TORNO AL PAGO DE CUOTAS REQUERIDO PARA MANTENER SU MEMBRESÍA ACTIVA; (D) SI SE CUMPLIÓ CON EL PROCEDIMIENTO ESTABLECIDO PARA REVOCAR LA MEMBRESÍA DE LOS DUEÑOS; (E) SI SE CUMPLIÓ CON EL PROCESO DE REINSTALACIÓN DE LA MEMBRESÍA.

En esencia, alegó que el Foro Primario no consideró lo dispuesto en el reglamento de BVPA, cuyo contenido, sostuvo, era claro. Planteó que DCI tenía la obligación de circular el memorando del 4 de diciembre de 2019 a todos los miembros, pero que, aun sin recibir la factura —cuyo envío era opcional—, el matrimonio Felder estaba obligado a pagar por adelantado la cuota del año entrante. Ello, puesto que cuando el matrimonio Felder decidió convertirse en miembro de BVPA, aceptó regirse por los *By-Laws,* cuya Sección 2 del Artículo XI establece que las cuotas serían pagadas por adelantado el primer día de enero de cada año fiscal. Añadió que la Sección 3 de ese mismo Artículo dispone que, si un miembro incurría en atraso por más de dos (2) meses desde el inicio del año fiscal, la Junta de Directores podía dar por terminados sus derechos y privilegios. Por tal razón, argumentó que resultaba irrelevante si los recurridos recibieron o no el memorando en diciembre de 2019 o la factura, pues la Junta de Directores no tenía obligación de notificarles sobre su deber de pago.

En cuanto al término adicional de dos (2) meses para pagar la anualidad, BVPA admitió que el señor Felder acudió en febrero de 2020 a las oficinas de DCI para realizar el pago, pero la administradora, la señora Natalie Ortiz Laviena, no estaba disponible para recibirlo. Empero, cuestionó que el señor Felder no dejó un cheque en el buzón de DCI ese día como evidencia de pago oportuno.

Señaló que no fue hasta el 13 de junio de 2020 —tres (3) meses y trece (13) días después de la fecha límite—, que el matrimonio Felder dejó un cheque de $1,130.00, en clara violación a los *By-Laws*. Asimismo, indicó que las conversaciones y gestiones previas de pago realizadas por el señor Felder no alteraron el hecho de que incumplió con la obligación en el tiempo dispuesto.

Por último, respecto a la reinstalación de las membresías, BVPA reconoció que los recurridos lo solicitaron conforme a la Sección 8 del Artículo II de los *By-Laws*; no obstante, la Junta de Directores les comunicó mediante carta del 3 de julio de 2020 que la solicitud fue denegada debido a su historial de pago.

Por su parte, el 13 de julio de 2025,[6] el matrimonio Felder presentó su oposición a la expedición del auto de *certiorari*. Adujo que los peticionarios pretendieron cuestionar un dictamen fundamentado en derecho al existir controversias genuinas y sustanciales sobre los hechos materiales. A su vez, planteó que BVPA no demostró abuso de discreción, error de derecho manifiesto o una situación que impactara el interés público o causara perjuicio irreparable. Por ello, manifestó que no procedía expedir el auto de *certiorari*, ya que se impugnó el ejercicio razonado de discreción del TPI al denegar la sentencia sumaria por existencia de controversia.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338

---

[6] Enmendado el epígrafe el 14 de julio de 2025.

(2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra; Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). Así, solo procede revisar resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir. Su propósito es evitar la dilación que implicaría la revisión inmediata de controversias que pueden atenderse en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), R. 40, establece los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*. A saber, este Tribunal debe evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari,* no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra,* pág. 336. En tal caso, esta Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra,* pág. 405.

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales que requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA,* 2025 TSPR 78, 216 DPR __ (2025); *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que pueda afectar el resultado de la reclamación según el derecho sustantivo. Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Cónsono con lo anterior, procede dictar sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto a cualquier otra evidencia, demuestran que no existe controversia real sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos,*

*supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* págs.336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c); *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la falta de prueba para refutar la evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* pág. 337.

El Tribunal Supremo estableció el estándar para este Foro apelativo revisar una sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra.* Primero, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar *de novo* una solicitud de sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, solamente se puede considerar evidencia presentada al Foro *a quo,* y se debe examinar el expediente de la forma más favorable a la parte opositora. *Íd., supra,* pág. 116.

Segundo, corresponde verificar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos codificados por la Regla 36 de Procedimiento Civil, *supra,* R. 36 y discutidos en el caso *SLG Zapata- Rivera v. J.F. Montalvo, supra. Íd.* Tercero, debe determinarse si en realidad existen hechos materiales en controversia. De ser así, es necesario distinguir entre los hechos controvertidos e incontrovertidos, según dispone la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. *Íd.* Cuarto, si no existen hechos materiales en controversia, procede evaluar si el TPI aplicó correctamente el derecho. *Íd.,* pág. 119.

### C. Contrato

Un contrato es un negocio jurídico bilateral mediante el cual dos (2) o más partes manifiestan su consentimiento en la forma

prevista en la ley para crear, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, 31 LPRA sec. 9751. La decisión de contratar o no y con quién es facultativa, siempre que no se ejerza de forma abusiva ni contra una disposición legal. Artículo 1232 del Código Civil, 31 LPRA sec. 9753. Asimismo, las partes puede pactar cualquier cláusula que no sea contraria a la ley, moral o al orden público. *Íd.* Una vez constituido el contrato, las partes se comprometen a cumplir con lo pactado. *UIA v. Santander Securities y otros*, 214 DPR 601 (2024); *Rosario Rosado v. Pagán Santiago*, 196 DPR 180 (2016); *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera*, 174 DPR 686 (2008). Así, lo acordado en un contrato tiene fuerza de ley entre las partes, sus sucesores y terceros en la forma que dispone la ley. Artículo 1233 del Código Civil, *supra,* sec. 9754. Por ello, la contravención de una obligación contractual conlleva, entre otros, quedar sujeto al cumplimiento específico de lo pactado. *PRFS v. Promoexport, supra.*

### III.

En el presente caso, los peticionarios solicitan revocar la *Resolución* que el TPI emitió el 28 de mayo de 2025. Sostuvieron que el Foro *a quo* erró al determinar que existía controversia sobre hechos esenciales y declarar No Ha Lugar la solicitud de sentencia sumaria.

Como cuestión de umbral, nos corresponde revisar de *novo* la solicitud de sentencia sumaria, así como su oposición. Efectuado tal ejercicio, concluimos que no existen controversias sustanciales respecto al cumplimiento de la Regla 36 de Procedimiento Civil, supra, R. 36, ni sobre los hechos materiales de este caso que impidan resolver este caso. Por tanto, procede evaluar si el TPI aplicó correctamente el derecho.

A la luz de la normativa jurídica aplicable a este caso, resulta evidente que los hechos señalados por el Foro Primario como controvertidos no constituían una controversia material. En primer

lugar, en cuanto a la obligación de pago de la cuota anual, al matrimonio Felder convertirse en miembros de BVPA, aceptaron regirse por los *By-Laws* de la corporación. La Sección 2 del Artículo XI de dicho documento establece claramente que las cuotas debían pagarse por adelantado el primer día de enero de cada año fiscal. Por lo tanto, el hecho de que la factura o el memorando fueran enviados antes o después de dicha fecha no altera la obligación contractual de pago. A tenor con los *By-Laws* a los que las partes se obligaron contractualmente, la Junta de Directores no estaba obligada a notificar a los miembros sobre este deber, y la omisión de recibir la factura no eximía del cumplimiento de la obligación de pago. Así, aun si los recurridos no hubieran recibido el documento, tal circunstancia no eliminaba su deber contractual de pagar puntualmente la cuota anual.

Respecto a los intentos de pago previos, aunque el señor Felder acudió a las oficinas de DCI en febrero de 2020 para efectuar el pago, el cheque finalmente fue depositado el 13 de junio de 2020, más de tres (3) meses después de la fecha límite establecida en los *By-Laws*, lo que constituyó un claro incumplimiento contractual. A esos efectos, la Sección 3 del Artículo XI dispuso expresamente que:

> When any member shall be in default in the payment of dues as well as any assessment or other charges for a period of two (2) months from the beginning of the fiscal year or period of which such dues became payable, membership rights and privileges shall thereupon be terminated by the Board of Directors in the manner provided in Article II of these By-laws.

Es decir, al transcurrir dos (2) meses desde el inicio del año fiscal sin que se efectuara el pago, los derechos y privilegios de membresía quedaban sujetos a terminación por parte de la Junta de Directores. Esta sección no condicionó la validez de la cancelación de la membresía a la existencia de notificación previa ni al envío de factura, sino al mero incumplimiento del deber de pago dentro del término establecido.

Del mismo modo, la Sección 4 del Artículo II de los *By-Laws* estableció diáfanamente que:

**The Board of Directors, by affirmative vote of a majority of all of the members of the Board, may suspend the rights and privileges of a member to vote [...] or to utilize the pool** [...] for cause after an appropriate hearing, or **for default in the payment of dues, assessments or other charges for the period fixed in Article XI.** (Énfasis nuestro).

De la lectura conjunta de ambas disposiciones se desprende que la Junta de Directores contaba con la facultad expresa de cancelar la membresía del matrimonio Felder una vez incurrió en atraso en el pago de la cuota anual por un término mayor a dos (2) meses. Aun cuando los recurridos alegaron que intentaron pagar en febrero de 2020, lo cierto es que no lograron acreditar que entregaron un cheque dentro del término de gracia contemplado por los *By-Laws*. El único pago evidenciado fue el del 13 de junio de 2020, luego de transcurrir en exceso de seis meses desde el momento en que debió efectuarse el mismo.

En ese sentido, el alegato de que los peticionarios se negaron a recibir el pago o de que existieron instrucciones internas para no depositar el cheque carece de relevancia jurídica, pues la obligación de pago era exigible desde el 1 de enero de 2020, independientemente de los trámites administrativos de BVPA. Asimismo, en relación con las comunicaciones entre las partes, incluyendo su fecha y contenido, tampoco se configura una controversia material. Ninguna de esas conversaciones tenía el efecto de interrumpir, suspender o modificar la obligación esencial de pagar la cuota en la fecha establecida. A lo sumo, dichas gestiones reflejan intentos posteriores de los recurridos por subsanar un incumplimiento. Los *By-Laws* eran claros en cuanto a que el incumplimiento por más de dos (2) meses conllevaba la cancelación de los derechos de membresía. Por ende, el incumplimiento fue atribuible exclusivamente al matrimonio Felder, lo que legitimó a la Junta de

Directores para cancelar su membresía conforme a sus prerrogativas reglamentarias.

Finalmente, en cuanto a la solicitud de reinstalación de la membresía, la Junta de Directores ejerció su facultad discrecional de denegar la solicitud debido al historial de pagos atrasados. En lo atinente a la fecha de la solicitud de reinstalación, este aspecto tampoco es material para la controversia. El hecho no disputado es que la Junta de Directores recibió la solicitud y, tras evaluarla, decidió denegarla. Lo medular no era cuándo se presentó, sino si la Junta actuó dentro de las facultades que le reconocen los *By-Laws*, lo cual, como ya se discutió, ocurrió.

Respecto a si la denegatoria de reinstalación se llevó a cabo en cumplimiento con los *By-Laws*, resulta pertinente subrayar que no existía controversia material. El reglamento fue claro en establecer que la Junta de Directores podía reinstalar a un exmiembro por el voto afirmativo de la mayoría de sus integrantes, sujeto a las condiciones que entendieran apropiadas. En este caso, la Junta ejerció esa facultad de manera razonada al considerar el historial de incumplimiento de los recurridos, por lo que no se configuró violación alguna a las normas internas. A su vez, los *By-Laws* no exigían votación unánime u otro procedimiento adicional al expresamente contemplado. Por el contrario, el propio reglamento reconoce que la reinstalación es una prerrogativa de la Junta y que puede ser resuelta mediante el voto afirmativo de la mayoría de sus miembros. A saber, la Sección 6 del Artículo II de los *By-Laws* dispuso que:

> Upon written request signed by a former member and filed with the Secretary-Treasurer, the Board of Directors, **by the affirmative vote of a majority of the members of the Board**, may reinstate such former member to membership upon such terms as the Board of Directors may deem appropriate, provided all the conditions of membership are met. (Énfasis nuestro).

En suma, cada uno de los supuestos hechos que el TPI catalogó como controvertidos resultaba irrelevante o inmaterial a los

efectos de resolver la controversia bajo la Regla 36 de Procedimiento Civil, *supra,* R. 36. Los hechos materiales de este caso —el incumplimiento del pago anual por parte del matrimonio Felder y la facultad de la Junta de Directores de cancelar la membresía en consecuencia y la denegatoria de su reinstalación— fueron incontrovertidos, están constatados en el expediente y apoyados por el contrato celebrado entre las partes. Por tanto, este Foro concluye que el TPI erró al declarar No Ha Lugar la solicitud de sentencia sumaria de los peticionarios, ya que no existía controversia real ni sustancial sobre los hechos materiales que requiriera un juicio plenario.

A tenor con lo anterior, corresponde expedir el auto de *certiorari,* revocar la *Resolución* recurrida y declarar Ha Lugar la solicitud de sentencia sumaria de BVPA.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la determinación recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones