Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| PR RECOVERY & DEVELOPMENT JV, LLC<br><br>Apelado<br><br>v.<br><br>KARLA SABRINA AVILES PEREZ H/N/C LITTLE ROCK DAY CARE Y OTROS<br><br>Apelante | KLAN202400450 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2021CV00153<br><br>Sobre: Cobro de dinero – ordinario y otros |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nosotros, Karla Sabrina Avilés Pérez h/n/c Mobiliario Little Rock Day Care; Juan José Avilés, así como Carmen Milagros Pérez Rivera (apelantes) y solicitan la revocación de la *Sentencia Sumaria* emitida el 26 de enero de 2024 por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario). En esta, el TPI declaró ha lugar la demanda sobre cobro de dinero y ejecución de hipoteca instada por PR Recovery and Development JV, LLC (PRD o apelada) en contra de los apelantes.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

**I.**

La PRD instó la demanda de epígrafe, en contra de los apelantes, el 8 de enero de 2021. De sus alegaciones se desprende que, la PRD es una compañía de responsabilidad limitada organizada bajo las Leyes de Delaware y autorizada a hacer negocios en Puerto Rico. Adquirió ciertos activos del Banco de Desarrollo Económico para Puerto Rico (BDE), entre los cuales se incluye el

Número Identificador

SEN2024 _____

préstamo comercial otorgado a Karla Avilés Pérez h/n/c Little Rock Day Care por la suma agregada de $307,365.00.

Para evidenciar las facilidades de crédito otorgadas bajo el préstamo y los desembolsos hechos bajo estas, los codemandados suscribieron los siguientes Pagarés:

i. *Pagaré de Desembolso* por la suma principal de $37,365.00 a favor del BDE, o a su orden, con vencimiento 5 de julio de 2017 (en adelante el "Pagaré I"), autenticado bajo el testimonio número 5,392 del Notario Público Eduardo Tamargo el 22 de junio de 2007.

ii. *Pagaré* por la suma principal de $270,000.00 a favor del BDE, o a su orden, con vencimiento 5 de julio de 2037, (en adelante el "Pagaré II"), autenticado bajo el testimonio número 5,393 del Notario Público Eduardo Tamargo el 22 de junio de 2007.

Para asegurar y garantizar las obligaciones bajo el *Contrato de Préstamo*, la codemandada Karla Avilés suscribió un *Contrato de Prenda,* autenticado bajo el testimonio número 5,395 del Notario Público Eduardo Tamargo el 22 de junio de 2007.

De otra parte y mediante el referido *Contrato de Prenda*, la codemandada ofreció la siguiente garantía como colateral:

i. Pagaré Hipotecario a favor del BDE, o a su orden, con vencimiento a la presentación, por la suma de $270,000.00 autenticado bajo el testimonio número 5,391 del Notario Público Eduardo Tamargo el 22 de junio de 2007 (en adelante "Pagaré Hipotecario"), garantizado por Hipoteca constituida en virtud de la Escritura Número 45 del mismo Notario y en igual fecha (en adelante la "Hipoteca").

La hipoteca quedó debidamente perfeccionada al constar inscrita sobre la Finca 39,736 de Bayamón Sur, inscripción 6ta. Además, para asegurar y garantizar las obligaciones bajo el *Contrato de Préstamo*, la codemandada Karla Avilés suscribió un *Acuerdo de Gravamen Mobiliario*, autenticado bajo el testimonio número 5,396 del Notario Público Eduardo Tamargo el 22 de junio de 2007.

Los codemandados Juan José Avilés y Carmen Pérez Rivera garantizaron solidariamente, en su carácter personal, con bienes presentes y futuros, las obligaciones de Karla Aviles mediante una *Garantía Continua e Ilimitada,* autenticada por el testimonio 5,394

del Notario Público Eduardo Tamargo el 22 de junio de 2007. De las alegaciones también surge que, el 6 de febrero de 2013, los codemandados y el BDE suscribieron una *Enmienda a Contrato de Préstamo*, autenticado bajo el testimonio número 5,763 del Notario Público Rafael A. Lugo Guzmán. En esta reconocieron el otorgamiento del *Contrato de Préstamo*, los documentos de préstamo y acordaron establecer un pagaré adicional, por la suma de $7,548.76 a favor del BDE o a su orden, sin intereses y con vencimiento al 5 de julio de 2037 (el "Pagaré III"). Lo antes, para reflejar los intereses pendientes de pagar en una moratoria otorgada por el BDE a los codemandados desde el 5 de abril de 2008 hasta el 5 de julio del mismo año.

En calidad de tenedor de los pagarés antes descritos, la PRD realizó gestiones de cobro, las cuales resultaron infructuosas, por lo que, reclamó el pago de lo adeudado, por estar vencido, líquido y exigible. Suplicó al foro judicial declarar ha lugar la demanda, así como la ejecución de la hipoteca y el gravamen mobiliario.

Los demandados acreditaron su alegación responsiva, en la que, en esencia, negaron lo expuesto y argumentaron que la transacción entre el BDE y la PRD es nula *ab initio.* Abundaron sobre la presunta ineficiencia del negocio jurídico por incumplimiento de la ley orgánica del BDE, los correspondientes reglamentos del BDE y la ley federal *Puerto Rico Oversight, Management, and Economic Stability Act* (Ley PROMESA). En su consecuencia, sostuvieron que la PRD carece de legitimación activa para reclamar pago alguno a los demandados.

Así las cosas y superadas las etapas iniciales del litigio, la PRD presentó un petitorio sumario en el cual propuso 20 hechos incontrovertidos para fundamentar su causa.[1]

---

[1] Apéndice, págs. 128-222. Junto a su solicitud presentó múltiples anejos, a saber: Anejo A: Contrato de Préstamo; Anejo B-Pagaré de Desembolso Facilidad

Los apelantes se opusieron. A pesar de reconocer y admitir que, no existe controversia en la mayoría de los hechos propuestos, insistieron en que, los documentos señalados en la demanda fueron suscritos con el BDE y no con la PRD, por lo que, este último, carece de legitimación activa, para instar la presente causa de acción. Al proponer sus propios hechos incontrovertidos señalaron en particular que, la PRD no es un banco, un fideicomiso o institución al momento del otorgamiento del contrato de compraventa de la cartera de préstamos del BDE. Por último, arguyeron que, las controversias existentes impiden la adjudicación de la causa por la vía sumaria. Suplicaron al foro primario autorizar el descubrimiento de prueba y agotar métodos alternos para la solución de conflictos.[2]

Evaluado lo anterior, el TPI consignó las siguientes 15 determinaciones de hecho:

1. El 22 de junio de 2007 el BDE y los codemandados firmaron un Contrato de Préstamo mediante el cual el BDE le extendió a Avilés Pérez un préstamo comercial por la suma principal total de $307,365.00, autenticado bajo el testimonio número 4,097 del notario Eduardo Tamargo del 22 de junio de 2007.
2. El Préstamo otorgado a los codemandados se dividió en dos (2) facilidades de crédito de la siguiente manera:
    i. Facilidad de Crédito #1: Préstamo a término por TREINTA Y SIETE MIL TRESCIENTOS SESENTA Y CINCO DÓLARES ($37,365.00), con vencimiento al 5 de julio de 2017 y devengando intereses a razón del 8.75% anual por los primeros cinco años, la cual será revisada al quinto año de la Fecha de Cierre y fijada hasta la fecha de su vencimiento; y
    ii. ii. Facilidad de Crédito #2: Préstamo a término por la cantidad de DOSCIENTOS SETENTA MIL DÓLARES ($270,000.00) con vencimiento al 5 de julio de 2037, y devengando intereses a razón del 8.25% anual por los primeros cinco años, la cual será revisada al cumplirse el quinto, decimo, decimoquinto, vigésimo, vigesimoquinto aniversario de la Fecha de Cierre y fijada hasta que se cumpla el próximo aniversario de los antedichos.
3. Para evidenciar las Facilidades de Crédito otorgadas bajo el Préstamo y los desembolsos hechos bajo éstas, los codemandados suscribieron los siguientes Pagarés:

---

de Crédito I por $37,365.00; Anejo C-Pagaré de Desembolso Facilidad de Crédito II por $270.000.00; Anejo D-Contrato de Prenda; Anejo E-Escritura Número 45 de Hipoteca en Garantía de Pagaré; Anejo F-Pagaré Hipotecario por $270,000.00; Anejo G-Certificación Registral; Anejo H-Acuerdo de Gravamen Mobiliario; Anejo I-Declaración de Financiamiento; Anejo J-Garantía Continua e Ilimitada; Anejo K-Enmienda a Contrato de Préstamo; Anejo L-Pagaré por valor de $7,548.76; y Anejo M-Declaración jurada suscrita por Rose Alonso López.

[2] Apéndice, págs. 258-297. Con su oposición acompañó los siguientes documentos: Anejo A-Contrato de Préstamo y Anejo B-Correos electrónicos.

     i.    Pagaré de Desembolso por la suma principal de $37,365.00 a favor del BDE, o a su orden, con vencimiento 5 de julio de 2017 (en adelante el "Pagaré I"), autenticado bajo el testimonio número 5,392 del Notario Público Eduardo Tamargo del 22 de junio de 2007.

     ii.    Pagaré por la suma principal de $270,000.00 a favor del BDE, o a su orden, con vencimiento 5 de julio de 2037, (en adelante el "Pagaré II"), autenticado bajo el testimonio número 5,393 del Notario Público Eduardo Tamargo del 22 de junio de 2007.

4. Para asegurar y garantizar las obligaciones bajo el Contrato de Préstamo, la codemandada Avilés Pérez suscribió un Contrato de Prenda, autenticado bajo el testimonio número 5,395 del notario Eduardo Tamargo del 22 de junio de 2007.

5. Mediante el Contrato de Prenda, la codemandada Avilés Pérez ofreció la siguiente garantía como colateral:

     i.    Pagaré Hipotecario a favor del BDE, o a su orden, con vencimiento a la presentación, por la suma de $270,000.00, autenticado bajo el testimonio número 5,391 del Notario Público Eduardo Tamargo del 22 de junio de 2007 (en adelante "Pagaré Hipotecario"), garantizado por Hipoteca constituida en virtud de la Escritura Número 45 del mismo Notario y en igual fecha (en adelante la "Hipoteca")

6. La Hipoteca grava todo el derecho, título e interés de la codemandada Avilés Pérez sobre la siguiente propiedad inmueble:

---"URBANA: Solar marcado con el número nueve (9) del Bloque AJ de la Urbanización Rexville, situado en el Barrio Pájaros de Bayamón, Puerto Rico, con una cabida de Trescientos quince metros cuadrados (315.00m.c.), en lindes por el NORTE, en doce punto seis metros (12.6m.), con la Avenida Las Cumbres; por el SUR, en doce punto seis metros (12.6 m.), con la calle sesenta y siete (67); por el ESTE, en veinticinco metros (25.00m.), con el solar número diez (10); y por el OESTE, en veinticinco metros (25.00m.), con el solar número once (11). Enclava una casa residencial para una familia." Inscrita al folio 111 del tomo 887 de Bayamón Sur, finca número treinta y nueve mil setecientos treinta y seis (39,736), del Registro de la Propiedad de Puerto Rico, Sección Primera (1ra) de Bayamón.

7. La Hipoteca quedo debidamente perfeccionada al constar inscrita sobre la Finca 39,736 de Bayamón Sur, inscripción 6ta.

8. Para asegurar y garantizar adicionalmente las obligaciones bajo el Contrato de Préstamo, la codemandada Avilés Pérez suscribió un Acuerdo de Gravamen Mobiliario, autenticado bajo el testimonio número 5,396 del notario Eduardo Tamargo del 22 de junio de 2007.

9. En virtud de Acuerdo de Gravamen Mobiliario, se cedió y entregó en concepto de garantía colateral los siguientes bienes muebles:

     i.    Todos los bienes, equipos, valores, bienes incorporales, bienes intangibles, documentos negociables, instrumentos, inventario, muebles, maquinaria, cuentas por cobrar, libros, récords, archivos, materiales, y documentos sitos o utilizados en la operación del negocio del Prestatario antes indicado, o en cualquier otra que tenga o pueda tener en el futuro, o en cualquier sitio o lugar en que se encuentren, y todos los bienes descritos en el Exhibit "A", si alguno, de este

contrato, según enmendado de tiempo en tiempo, e incluyendo, además, cualquiera otros que sean adquiridos posteriormente, ya sea por permuta, reemplazo o compra;

    ii.    Todo interés, dinero en efectivo, instrumentos y otra propiedad recibida de tiempo en tiempo de otra manera distribuida con relación a, o cambio de cualquiera de las propiedades antes descritas, incluyendo sus respectivos reemplazo, substitutos y productos y cualquier libro, récords y documentos relacionados directa o indirectamente con éstos;

    iii.    Todo producto, interés o propiedad de cualquier tipo generada por los bienes descritos anteriormente.

10. El gravamen sobre los bienes muebles anteriormente enumerados cedidos y entregados en prenda quedó debidamente perfeccionado al haberse presentado en el Registro de Transacciones Comerciales del Departamento de Estado la correspondiente Declaración de Financiamiento autenticada bajo el testimonio número 5,398 del notario Eduardo Tamargo del 22 de junio de 2007, la cual quedo inscrita bajo el número 2007036601.

11. Los codemandados Avilés Aponte y Pérez Rivera garantizaron solidariamente, de forma ilimitada y continua, en su carácter personal, con bienes presentes y futuros, las obligaciones de Avilés Pérez bajo el Préstamo, según documento titulado Garantía Continua e Ilimitada, autenticado por el testimonio 5,394 del notario Eduardo Tamargo del 22 de junio de 2007.

12. El 6 de febrero de 2013 los codemandados y el BDE suscribieron una Enmienda a Contrato de Préstamo, autenticado bajo el testimonio número 5,763 del notario Rafael A. Lugo Guzmán del 6 de febrero de 2013.

13. Mediante la Enmienda A Contrato De Préstamo los codemandados admitieron y reconocieron el otorgamiento del Contrato de Préstamo y los documentos de préstamo y acordaron establecer un Pagaré adicional por la suma de $7,548.76 a favor del BDE o a su orden, sin intereses y con vencimiento al 5 de julio de 2037 para reflejar los intereses pendientes de pagar en una moratoria otorgada por el BDE a los codemandados del 5 de abril de 2008 hasta el 5 de julio de 2008. Todos los demás términos y condiciones bajo el Contrato de Préstamo y los documentos del préstamo quedaron inalterados.

14. El Contrato de Préstamo entre Avilés Pérez h/n/c Little Rock Day Care y el BDE contiene una cláusula limitativa de traspaso y/o cesión del préstamo en la Sección 3.06 del Articulo III.

15. Al 4 de enero de 2021 los Codemandados adeudan solidariamente PR RECOVERY las siguientes cantidades:

    i.    Bajo el Pagaré I no se adeuda cantidad alguna ya que fue saldado en su totalidad.

    ii.    Bajo el Pagaré II: Número de Préstamo #1090019773- Principal $228,088.99, intereses $23,308.82, (escrow $116.81), Total: $251,281.00; intereses continuarían en aumento, a razón de $31.25 diarios hasta su saldo; iii. Bajo el Pagaré III: Número de Préstamo #1090022832- Principal $7,548.76 (intereses y escrow $0).[3]

Basado en lo anterior y el derecho aplicable, el foro primario declaró ha lugar la demanda incoada. En particular, atendió la

---

[3] Apéndice, págs. 317-320.

petición sobre la presunta falta de legitimación activa. En su análisis destacó que la Sección 3.06 del Contrato de Préstamo otorgado entre las partes, dispone que, el Banco tendrá el derecho absoluto de vender o ceder a cualquier otro Banco, fideicomiso o institución, toda o cualquier parte del préstamo. En referencia a lo anterior y a lo resuelto por otros paneles hermanos de esta Curia, determinó que el término "institución" es sumamente amplio y debe ser entendido e interpretado de forma coherente con el derecho absoluto conferido al BDE para vender o ceder el préstamo. En ese sentido, concluyó que, PRD está comprendido dentro de la definición de "institución" y el BDE tenía pleno derecho a vender o ceder el préstamo que otorgó con la parte demandada a la aquí demandante. A lo antes, añadió que, mientras no se determine lo contrario, a PRD le asiste una presunción de que su título es válido y de que está facultado para reclamar su acreencia.

Con relación a la acción principal sobre cobro de dinero, el TPI determinó que no se controvirtió con éxito la cuantía debida.[4] En su consecuencia, ordenó a Karla Sabrina Avilés Pérez h/n/c Little Rock Day Care, Juan José Avilés Aponte y Carmen Milagros Pérez Rivera a pagar solidariamente, a la parte demandante, la suma adeudada, más los intereses que continúen acumulándose, hasta el pago total de la deuda, a razón de $31.25 diarios, bajo el Pagaré II y $7,548.76 bajo el Pagaré III, más la cantidad adicional de $30,736.50 por concepto de costas, gastos y honorarios de abogados según acordado.[5]

Oportunamente, los apelantes solicitaron reconsideración, la cual fue denegada por el foro primario el 4 de abril de 2024. Inconformes, los apelantes acuden ante esta Curia y señalan los siguientes dos errores, a saber:

---

[4] Apéndice, págs. 327-329.
[5] Apéndice, págs. 329-330.

El Tribunal de Primera Instancia erró al no ordenar a los apelados, antes de disponer de la Moción de Sentencia Sumaria, a contestar el descubrimiento de prueba que los apelantes cursaron, y cuyo plazo para su contestación había vencido antes de la mencionada Moción.

El Tribunal de Primera Instancia erró al concluir que procedía dictar Sentencia, dado que el presente caso existe controversia acerca de si la parte apelada tiene legitimación para cobrar la deuda reclamada, lo cual es un requisito para que proceda cualquier tipo de reclamación en cobro de dinero.

El 4 de junio de 2024, PRD acreditó su *Alegato en Oposición a Apelación,* por lo que, con el beneficio de las posturas de las partes, procedemos a resolver.

**II.**

**A. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y sustancial de un hecho material que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* 2023 TSPR 120, resuelto el 3 de octubre de 2023. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un

remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023). Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610-611 (2023). De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de

acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra.

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd*. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd*. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd*.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR

608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de

la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

### B. Teoría general de los contratos y el contrato de préstamo

En nuestra jurisdicción rige el principio de la autonomía contractual o *pacta sunt servanda. Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. De conformidad, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. *Íd.*; Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372.[6] De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a

---

[6] Hacemos referencia al Código Civil de Puerto Rico de 1930, hoy derogado, pues los hechos del caso ante nuestra consideración ocurrieron con anterioridad a la vigencia del Código Civil de Puerto Rico de 2020.

la buena fe, al uso y a la ley. *Íd.*; Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3375.

Como se sabe, las partes contratantes quedan obligadas a las condiciones y a los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. *Íd.;* Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391. Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio". *Rosario Rosado v. Pagán Santiago,* 196 DPR 180, 189 (2016). Al mismo tiempo, el Tribunal Supremo ha expresado que, en las obligaciones contractuales, la ley primaria es la voluntad de las partes y los tribunales no pueden relevar a una parte de cumplir lo pactado cuando es legítimo y no contiene vicio alguno. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

En materia contractual, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471; *Marcial v. Tomé*, 144 DPR 522, 536 (1997). Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009).

El contrato de préstamo se caracteriza por su efecto traslativo, pues el prestatario recibe el título de la cosa objeto del préstamo. Es decir, la prestamista entrega la cosa desde que queda consumado el contrato y es el prestatario quien permanece obligado a devolver lo pactado en el término que establecieron las partes. Vélez Torres, J.M., *Curso de Derecho Civil, Derecho de Contratos,* Revista Jurídica

de la Universidad Interamericana de Puerto Rico, San Juan, Ed. 1990, pág. 451.

Según el Art. 1631 del entonces vigente Código Civil de 1930, 31 LPRA sec. 4511, el contrato de préstamo es aquel acuerdo mediante el cual "una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver [sic] otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo [...] El simple préstamo puede ser gratuito o con pacto de pagar interés." Además, en el contrato de préstamo, la parte demandada viene obligada al pago del capital adeudado, más los intereses devengados al tipo de ley convenido. Arts. 1644 y 1645 del Código Civil de 1930, 31 LPRA secs. 4571 y 4573. De igual modo, el Tribunal Supremo ha expresado que los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. *De Jesús González v. A.C.* 148 DPR 255, 271 (1998); Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994.

### C. La hipoteca y su ejecución

Sabido es que, la hipoteca es "un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria." *Bco. Popular v. Registrador,* 181 DPR 663, 673 (2011). El Art. 1756 del hoy derogado Código Civil de 1930, 31 LPRA sec. 5001, dispone los siguientes requisitos esenciales para constituir un gravamen hipotecario, a saber: (1) que se constituya para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad de la persona que la

hipoteca; (3) que las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o, en caso de no tenerla, se hallen legalmente autorizadas a tales efectos. Además, es requisito indispensable para que una hipoteca quede debidamente constituida el que conste en escritura pública y se inscriba en el Registro de la Propiedad. Art. 1774 del Código Civil de 1930, 31 LPRA sec. 5042.

Como se sabe, la hipoteca es de carácter accesorio e indivisible, su constitución es registral y su propósito es gravar bienes inmuebles, ajenos y enajenables que permanecen en posesión de su titular. *Dist. Unidos de Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 110 (2016). Debido a su carácter accesorio, la hipoteca no es independiente de la vigencia de la obligación principal. *Íd.* Subsiste mientras el crédito garantizado este vigente y se extingue junto con la extinción de la obligación principal que garantiza. *Íd.* La acción hipotecaria puede ejercitarse al vencimiento de la obligación del crédito, según pactado en el título. *Íd.*

A tales efectos, la Ley Núm. 210-2015, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA secs. 6131-6161 y las Reglas 51.3 y 51.7 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 51.3 y 51.7, establecen el procedimiento a seguir para ejecutar el derecho real de hipoteca mediante una acción civil ordinaria en cobro de dinero y ejecución de hipoteca, también conocido como una venta en pública subasta. A esos efectos, el Art. 94 de Ley Núm. 210-2015, 30 LPRA sec. 6131, establece que "[u]na hipoteca vencida en todo o en parte, o sus intereses, podrá ser ejecutada por la vía judicial conforme a las disposiciones de este Título".

### III.

En su primer señalamiento de error, los apelantes cuestionan la determinación del foro primario de no ordenar a la PRD a

contestar el descubrimiento de prueba vencido, previo a disponer sumariamente del asunto ante sí. Lo anterior, pues alegan entre otros que, ello los puso en estado de indefensión, en menoscabo de su capacidad de identificar adecuadamente las defensas afirmativas. Levantan como segundo error que, no procedía dictar sentencia sumaria ante la presunta controversia en cuanto a si la PRD tiene legitimación activa para cobrar la deuda reclamada.

En su alegato en oposición, la PRD discute que, no procede la solicitud de descubrimiento de prueba que instaron los apelantes debido a que no está en controversia la deuda reclamada. De otra parte, la PRD asegura ser la acreedora de la deuda que reclama. Añade que, los apelantes incumplieron con sus obligaciones contractuales con el efecto de que la referida deuda es legalmente exigible, independientemente de quién sea su acreedor.

Como anteriormente expresamos, para evaluar la determinación del foro primario, y en virtud de la normativa antes expuesta, esta Curia debe revisar *de novo* la *Solicitud de Sentencia Sumaria* que instó PRD, la *Oposición a que se dicte sentencia sumaria* que presentaron los apelantes junto a sus respectivos anejos, a la luz del derecho aplicable. Nos corresponde evaluar en primer lugar, si ambas partes cumplieron los requisitos de forma que exige la Regla 36, *supra*, si existen hechos materiales en controversia que impiden la adjudicación del caso sumariamente, para luego aplicar el derecho correspondiente.

Tras evaluar el petitorio sumario de la PRD constatamos que, la parte apelada cumplió sustancialmente con las exigencias y formalidades requeridas por la Regla 36.3(a), *supra*. En cambio, los apelantes incumplieron con varios de los requisitos de forma que dispone la Regla 36.3(b) de Procedimiento Civil, *supra*. Primeramente, no enumeraron los párrafos de los hechos que considera están en controversia, tal cual enumerados en el petitorio

sumario de PRD. Además, no especificaron qué prueba sustenta las presuntas controversias de hechos que señalan, con referencia a la página o a la sección correspondiente. No obstante, lo anterior, y debido a que los tribunales tenemos discreción para considerar una oposición a solicitud de sentencia sumaria que incumple ciertos requisitos de forma, no procede revertir el dictamen recurrido por este fundamento. *Meléndez González et al. v. M. Cuebas,* supra. Completado dicho análisis, procedemos a determinar si existen controversias medulares y si el foro primario aplicó correctamente el derecho. Veamos.

Obra en el expediente ante nuestra consideración el *Contrato de Préstamo*[7] que suscribieron las partes, representado por dos Pagarés endosados a favor de PRD.[8] Tal cual expusimos en el tracto procesal, la deuda objeto de este pleito está garantizada solidariamente mediante una *Garantía Continua e Ilimitada.*[9] También surge del expediente la *Enmienda a Contrato de Préstamo*[10] que suscribieron las partes en donde reconocieron su obligación previa, la cual precisamos que, está garantizada con un gravamen inmobiliario[11] sobre una propiedad de los deudores en la Urbanización Rexville en Bayamón y con un gravamen mobiliario[12] sobre equipo, maquinarias, entre otros bienes determinados. Junto a la referida enmienda, los apelantes establecieron un nuevo *Pagaré*[13] para cubrir los intereses pendientes de pago. Cabe puntualizar que, el referido instrumento igualmente consta endosado a favor de PRD. Con dicho endoso, PRD advino acreedora del pagaré en cuestión, con derecho a exigir el cumplimiento del instrumento.

---

[7] Apéndice, págs. 128-159.
[8] Apéndice, págs. 160-165.
[9] Apéndice, págs. 209-212.
[10] Apéndice, págs. 213-216.
[11] Apéndice, págs. 192-193.
[12] Apéndice, págs. 195-207.
[13] Apéndice, págs. 217-218.

De lo anterior resulta evidente que, no existen controversias medulares que impidan la adjudicación de la presente causa por la vía sumaria. Los apelantes se obligaron a satisfacer la cuantía reclamada. Se colige además que, los apelantes incumplieron con sus obligaciones de pago bajo el préstamo suscrito. Conforme a la normativa antes expuesta, vencida la obligación principal, garantizada mediante una hipoteca, procede la ejecución del crédito hipotecario mediante una acción civil ordinaria. En lugar de controvertir la existencia de la referida deuda, los apelantes más bien cuestionaron la legitimación activa de PRD para reclamar el pago en cuestión, invocando la presunta nulidad de la transacción entre el BDE y PRD. Precisamos que, los apelantes impugnaron la facultad del BDE de transferir el préstamo a PRD, sin ser esta un banco, fideicomiso o institución financiera. Al cuestionar la legalidad de dicha cesión, los apelantes también disputaron la legitimación de PRD, para reclamar la deuda objeto de este pleito. Sin embargo, tal cual expusimos, con el endoso, PRD se convirtió en la titular del pagaré y, por ello, está legitimada para presentarlo en cobro de lo adeudado, bajo la presunción de validez que lo cobija.

Cabe señalar que, la disputa sobre la alegada ilegalidad de la transferencia del préstamo del BDE a PRD, en nada incide sobre la deuda de los acreedores objeto de este recurso. En ausencia de una controversia sobre a quién le pertenece la deuda, el monto de la deuda o en cuanto a si la misma fue sufragada en su totalidad, se presume la validez de la obligación crediticia que otorgaron los apelantes. El foro primario correctamente determinó que, a PRD le asiste una presunción sobre la validez de su título, mientras no se determine lo contrario. Corolario de lo anterior, y tras la PRD realizar

gestiones de cobro infructuosas, la reclamación de epígrafe está vencida, líquida y exigible.[14]

Surge del dictamen impugnado que, entre el BDE y la PRD, existe un pleito separado (caso núm. SJ2019CV11697) sobre la validez de la cesión de los pagarés. Cabe señalar que, independientemente del eventual resultado del referido pleito, en esta etapa de los procesos, no identificamos error en el dictamen apelado. De nuestro análisis *de novo* de la causa, colegimos que, los apelantes incumplieron con su obligación de pago, por lo cual, a esta fecha, la PRD -como poseedora del crédito- es la acreedora legítima de la obligación incumplida y tiene legitimación activa para exigir su cumplimiento por la vía judicial.

Por las razones que anteceden, concluimos que, los errores señalados no se cometieron.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia Sumaria* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] Sobre este tema, recientemente y a modo persuasivo, en *PR Recovery and Development JV, LLC v. The Woman From Mallorca, Inc., Iron Sphynx, Corp., y María S. Figueroa Lugo t/c/c María Socorro Figueroa Lugo,* nuestro más Alto Foro (recurso núm. CC-2024-0256) se negó a revisar el dictamen de un panel hermano de esta Curia (recurso núm. KLAN202301046). Mediante el referido dictamen, el panel hermano confirmó al foro de instancia quien resolvió que, PR Recovery and Development JV, LLC es la legítima tenedora por endoso del pagaré objeto del pleito, independientemente de que la parte allí demandada no haya sido notificada de la adquisición de las acreencias. Dictaminó además que, ante el incumplimiento de la parte demandada con las obligaciones contraídas, PR Recovery and Development JV, LLC tiene capacidad para cobrar las cuantías reclamadas.