ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| EDUARDO MARTÍNEZ Y/O ÁNGEL QUIÑONES AYALA<br>Recurrido<br><br>v.<br><br>GRUPO SCUDERIA INCORPORADO<br>Recurrente | KLRA202500321 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.:<br>SAN-2023-0013258<br><br>Sobre:<br>Talleres de Mecánica de Automóviles |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio de 2025.

Comparece ante nos el Grupo Scuderia Inc., representado por su presidente, el Sr. Rafael J. Mora (recurrente) y solicita que revoquemos la *Resolución* del Departamento de Asuntos del Consumidor (DACo), notificada el 26 de marzo de 2025.[1] Mediante el referido dictamen, el DACo declaró con lugar la *Querella* que instaron los señores Eduardo Martínez y Ángel Quiñones Ayala (recurridos) en contra del recurrente y ordenó al recurrente devolver a los recurridos la cantidad de $6,746.61.

Por los fundamentos que exponemos a continuación se confirma el dictamen recurrido.

**I.**

La presente causa inició, el 3 de febrero de 2023, con la presentación de una *Querella* que los recurridos instaron ante el DACo en contra del recurrente.[2] En síntesis, los recurridos

---

[1] Apéndice, págs. 72-79.
[2] *Íd.*, págs. 1-9.

Número Identificador

SEN2025_____

solicitaron la devolución del dinero pagado por los servicios pactados, más $15,000.00 en concepto de daños al vehículo y daños emocionales.[3] Alegaron que, contrataron los servicios del recurrente para realizar el tratamiento de protección de pintura en toda la parte exterior de su vehículo, por el monto de $4,936.11. Expusieron que, como resultado de los servicios del recurrente, el vehículo tiene señales de corrosión y la capota tiene un color diferente al resto del vehículo.

En respuesta, el 23 de febrero de 2023, el recurrente presentó su *Contestación a la Querella*.[4] En resumen, negó las alegaciones en su contra y sostuvo que el tratamiento de la pintura fue aplicado tomando las medidas correspondientes de la industria. Además, que, en aras de limitar cualquier imprevisto, contrató al taller de hojalatería Specialist Auto Body para reparar la laceración y corrosión de la pintura del vehículo de los recurridos, por lo cual, los reclamos de las partes se tornaron en académicos. Por último, acreditó que, la diferencia en color se debe a que el resto del vehículo tiene un tratamiento de protección de pintura que la capota no tiene. Así, pues, solicitó al DACo la desestimación con perjuicio de la *Querella* presentada en su contra, más la imposición de costas, gastos y honorarios por temeridad.

Realizada la correspondiente inspección ante el DACo,[5] el técnico de investigación rindió el *Informe de Inspección Generales* [sic][6] del cual se desprende lo siguiente:

> [a]l llegar al lugar de la cita entrevist[é] a las partes y el querellante me explic[ó] que los defectos alegados en la querella no existen por la razón de que [é]l incurrió en otra entidad de servicio fuera del querellado para la corrección del defecto y desea la devolución del dinero incurrido en todo asunto de la querella.
>
> El vehículo no se inspección[ó] porque era académico con el testimonio del querellado, pero le di una miradita y lo encontré bien en el área de la capota.[7]

---

[3] *Íd.*, pág. 7.
[4] *Íd.*, págs. 12-27.
[5] *Íd.*, págs. 32-35.
[6] *Íd.*, págs. 36-39.
[7] *Íd.*, págs. 38-39.

Tras varios incidentes procesales que resultan innecesarios pormenorizar, el DACo celebró una vista administrativa. Evaluada la prueba documental y testifical presentada, el DACo declaró con lugar la *Querella* a favor de los recurridos, y consignó las siguientes determinaciones de hechos:

1. La parte Querellante lo es Eduardo Martínez y Ángel Quiñones Ayala, y ambos son suegro y yernos [sic][,] respectivamente.

2. La parte Querellante Eduardo Martínez es dueño registral del vehículo de motor marca Toyota modelo Tundra del año 2021, color Luna Rock (en adelante "vehículo" y/o "Tundra").

3. A pesar de que el vehículo está a nombre del Querellante Eduardo Martínez, el Querellante Ángel Quiñones Ayala es quien lo utiliza ya que éste último utilizó el crédito de su suegro el Querellante Eduardo Martínez para obtener el vehículo.

4. El 12 de febrero de 2021, la parte Querellante contrató con la parte Querellada el tratamiento de protección de pintura en toda ¡a parte exterior del vehículo del Querellante, a un costo de $4,600.00, el cual incluyó lo siguiente: (i) Paint protection Film Full front (Full Hood, Full fenders, front bumper, head[l]ights, grill and mirrors); (ii) Paint Protection Film pilars; (iii) Paint Protection Film for doors, rear bumper, tailgate; (iv) Paint Protection Film Full Roof; (v) Paint Protection Film rear fenders.

5. Al trabajo realizado se le otorg[ó] garantía por diez años.

6. Allá para el mes de septiembre de 2021, la parte Querellante Ángel Quiñones Ayala mientras lava[b]a el vehículo, se percató de que la capota tenía una laceración y corrosión.

7. El 8 de septiembre de 2021, la parte Querellante Ángel Quiñones Ayala se comunicó con el Querellado, específicamente con el Sr. Alfonso Mora L[ac]laustra, para informarle sobre la condición de la capota.

8. El Querellado le ofreció al Querellante realizar la reparación del vehículo en cuestión en el Taller Specialist Auto Body, la cual fue notificada mediante llamada telefónica y mensaje de texto al Querellante, y éste estuvo de acuerdo con la misma.

9. El 15 de octubre de 2021, el Querellante Eduardo Mart[í]nez, le envió un mensaje de texto al Querellado por conducto de Alfonso Mora en el cual le preguntó a éste que cu[á]ndo podr[í]a pasar a recoger el vehículo (Tundra), a lo que el Sr. Alfonso Mora le contestó que estaba esperando cita en el Taller de Hojalatería.

10. El Querellante llevó el vehículo objeto del presente caso al Taller del Querellado, para que éste [sic] último personalmente llevara dicho vehículo al taller Specialist Auto Body, para que procedieran con la reparación.

11. El 5 de octubre de 2021, debidamente autorizado por el Querellante, el Querellado llevó el vehículo a realizar la reparación en la capota, con el taller de hojalatería Specialist Auto Body, a un costo de $3,733.08.

12. En o aproximadamente para el mes de noviembre de 2021, el Querellante le reclamó al Querellado que el color

de la capota trabajada y las otras partes del vehículo no era el mismo.

13. El Querellante le indicó al Querellado que la diferencia entre el color de la capota y del resto del vehículo, se debe a que el resto del vehículo tiene el tratamiento de protección de pintura, y en la capota no. Además, el Querellado le indicó que, si el Querellante tenía algún reclamo en cuanto al color y/o pintura del vehículo, que acudiera al Taller de Hojalatería Specialist Auto Body para que éstos [sic] le resolvieran, ya que el Querellado no fue quien realizó el trabajo de reparación.

14. Ante la posición del querellado, el querellante debió contratar con otro taller para reparar la diferencia en color de la capota y el resto del vehículo todo esto a un costo de $775.00 por remoción del tratamiento y $1371.61 por la pintura.[8]

Basado en lo anterior, la agencia recurrida concluyó que la parte aquí recurrida, cumplió con su obligación de pagar la cantidad acordada en el contrato confiando en la representación de la parte aquí recurrente de que el trabajo quedaría perfecto. Sin embargo, se entregó un auto con la capota lacerada y con corrosión. Cuando reclamó al recurrente, éste optó por pagar a un tercero para que reparara el vehículo lo cual no resulto exitoso. Ante ello incumplió su obligación contractual. En su consecuencia, el DACo ordenó al recurrente devolver a los recurridos los $4,600.00 cobrados por el tratamiento de protección de pintura; más las cuantías que los recurridos pagaron al Garaje Gil que se desglosan en $775.00 por la remoción del tratamiento y $1,371.61 por la pintura. Ante esta determinación, el recurrente presentó una *Solicitud de Reconsideración*, la cual fue declarada no ha lugar.[9]

Inconforme con el dictamen, el recurrente acude ante nos y señala la comisión de los siguientes errores:

Erró el Honorable DACo al declarar CON LUGAR la Querella y ordenar el pago al Querellado-Recurrente por la suma de $6,746.61 dólares a favor de la parte Recurrida-Querellante en concepto de devolución del pago del servicio de tratamiento de pintura ($4,600.00) más $775.00 por concepto de remoción del tratamiento, más $1,371.61 por la pintura $33,355.92 [sic], y a pesar de que la evidencia tanto testifical como documental concluyó que el Recurrente-Querellado cumplió con sus deberes y obligaciones en cuanto al negocio jurídico en cuestión.

Erró el Departamento de Asuntos del Consumidor (DACO) al determinar en el presente caso que el Recurrente-Querellado no cumplió con su obligación contractual de garantía y/o

---

[8] *Íd.*
[9] *Íd.,* Apéndice XIII, págs. 80-114.

atender los reclamos del vehículo Tundra cuando la prueba desfilada en la vista administrativa demuestra lo contrario, y al hacer determinaciones de hechos no sustentadas con la prueba presentada, y/o erró en la apreciación de la prueba por lo que sus desempeños cumplen con la pauta para revisión administrativa.

En respuesta a nuestro requerimiento, el DACo elevó ante esta Curia una copia certificada del expediente administrativo objeto del presente recurso y la regrabación de la vista administrativa celebrada el 8 de febrero de 2024 y el 2 de abril de 2024.

Procedemos a resolver.

## II.

### A. La Revisión Judicial y la Doctrina de la Deferencia Judicial

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, resuelto el 21 de mayo de 2025.[10] Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son en muchas ocasiones los primeros intérpretes de las leyes que rigen el ejercicio

---

[10] Véase, además, *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024.

de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.*

Por lo tanto, al revisar una actuación de una agencia administrativa el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.* A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y la jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.* De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo sin antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024. Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado o *expertise* que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta Planificación et al.,* 204 DPR 581 (2020). Ahora bien, cuando el razonamiento de la agencia sea incompatible o contrario al propósito y a la política pública del estatuto interpretado, los tribunales tienen libertad absoluta de descartar las conclusiones de dicho organismo administrativo, en aras de obtener un resultado sensato, lógico y razonable. *Otero Rivera v. Bella Retail Group, Inc. y otros,* supra.

De otra parte, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

**B. Teoría general de los contratos y acciones *ex contractu***

En nuestra jurisdicción rige el principio de la autonomía contractual o *pacta sunt servanda. Cruz Cruz y otra v. Casa Bella Corp. y otros,* 213 DPR 980, 995 (2024). Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. *Íd.*; Art. 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753. De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1237 del Código Civil 2020, 31 LPRA sec. 9771.

Como se sabe, las partes contratantes quedan obligadas a las condiciones y a los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. *Engineering Services v. AEE,* 209 DPR 1012, 1027 (2022). Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio". *Rosario Rosado v. Pagán Santiago,* 196 DPR 180, 189 (2016). Al mismo tiempo, el Tribunal Supremo ha expresado que, en las obligaciones contractuales, la ley primaria es la voluntad de las partes y los tribunales no pueden relevar a una parte de cumplir lo pactado cuando es legítimo y no contiene vicio alguno. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999).

En lo pertinente a la presente controversia, el contrato de servicios está regulado por el Artículo 1381 de nuestro Código Civil, 31 LPRA sec. 10291, el cual dispone que: "[p]or el contrato de servicios, el prestador se obliga a proveer, sin estar subordinado al comitente, un servicio mediante el pago de un precio". En cuanto a las obligaciones del comitente, el Artículo 1385 dispone que: "[e]l comitente está obligado a: (a) pagar el precio de los servicios; y (b) proporcionar la colaboración necesaria para que los servicios

puedan prestarse". *Íd.*, sec. 10311. De otra parte, dentro de las obligaciones del prestador de servicios se encuentran:

> (a) prestar los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente a la actividad constitutiva de los servicios; (b) proveer al comitente la información esencial sobre la ejecución; (c) aportar los materiales utilizados corrientemente en la prestación de los servicios convenidos; y (d) prestar los servicios dentro del tiempo convenido o en el que razonablemente corresponda. Art. 1386 del Código Civil de 2020, 31 LPRA sec. 10312.

Sobre la indemnización por daños en caso de incumplimiento contractual, el Artículo 1158 de nuestro Código Civil, 31 LPRA sec. 9303, expone que "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados."

Cabe señalar que, las acciones *ex contractu* están basadas "en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento". *Álvarez v. Rivera*, 165 DPR 1, 18 (2005); *Trinidad v. Chade*, 153 DPR 280, 290 (2001). Asimismo, estas se refieren a actos u omisiones voluntarias que conllevan la inobservancia de las obligaciones anteriormente pactadas. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012).

En otras palabras, a través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia del incumplimiento de obligaciones previamente pactadas. *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 56 (2015). Así pues, para que proceda una reclamación sobre daños contractuales es preciso que el daño sufrido surja exclusivamente como consecuencia del incumplimiento de una obligación pactada, daño que no hubiese ocurrido sin la existencia del contrato. *Íd.*, pág. 56-57; *Maderas Tratadas v. Sun Alliance et al.*, supra, págs. 909-910.

### III.

El recurrente, en su recurso, impugna la *Resolución* del DACo, al amparo de la doctrina de vicios ocultos. A su entender, los

recurridos incumplieron los elementos para incoar una causa de acción por saneamiento de vicios ocultos, al reclamar los alegados desperfectos en la pintura del vehículo, fuera del término de seis (6) meses. Invoca la doctrina de actos propios para sustentar que los recurridos no reclamaron su insatisfacción con la pintura en contra de quien realizó el trabajo. Cuestiona, además, la apreciación de la prueba que realizó el TPI y la compensación que le impuso el DACo. Lo antes, toda vez que asegura haber honrado la garantía; haber cumplido con los acuerdos entre las partes; que no había la necesidad de remover el plástico y la pintura del vehículo marca Tundra, debido a que el presunto desperfecto era únicamente en la capota; y que los recurridos no evidenciaron el pago del cual solicitan reembolso.

Como se sabe, los foros apelativos debemos ser deferentes a los dictámenes de las agencias administrativas, en atención a la vasta experiencia y al conocimiento especializado que les ha sido encomendado. *Buxó Santiago v. Oficina de Ética Gubernamental,* supra. Además, la Sección 4.5 de la LPAU, *supra*, establece que los tribunales revisores debemos sostener las determinaciones de hechos de las agencias, si están basadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas, supra,* pág. 115. Análogamente, el Tribunal Supremo ha resuelto que, los tribunales apelativos no intervendremos con la apreciación de la prueba, con la adjudicación de credibilidad y con las determinaciones de hechos realizada por el juzgador de los hechos, salvo que se demuestre que actuó movido por pasión, prejuicio, parcialidad o que incurrió en error manifiesto. *Pueblo v. Hernández Doble,* 210 DPR 850 (2022).

Con respecto a la revisión de las conclusiones de derecho de las agencias, el Alto Foro reiteró que, corresponde a los tribunales revisarlas en todos sus aspectos. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, *supra*. A esos efectos, expresó que "los tribunales deben ejercer un

juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias". *Íd.*

Luego de examinar minuciosamente el expediente ante esta Curia junto a la prueba estipulada[11] y a los testimonios vertidos durante las vistas celebradas ante el DACo el 8 de febrero de 2024 y el 2 de abril de 2024, constatamos que, las determinaciones de hechos que formuló el DACo están basadas en evidencia sustancial.

Quedó establecido mediante el contrato de servicio objeto de este litigio, así ratificado a través del testimonio del Sr. Ángel Quiñones Ayala[12] que, los recurridos contrataron los servicios del recurrente para un tratamiento de protección de pintura en toda la parte exterior del vehículo Toyota, modelo Tundra, a cambio de $4,600.00, labor que el recurrente garantizó durante diez (10) años. De conformidad, el recurrente se obligó a prestar los servicios y la garantía correspondiente. *Engineering Services v. AEE, supra*, pág.1027.[13] Al cabo de siete (7) meses, contados a partir de la contratación, el vehículo de los recurridos comenzó a presentar señales de corrosión y laceración en la capota.[14] En su consecuencia, y según acordado, los recurridos acudieron al recurrente para reclamar la garantía y este, a su vez, aceptó su responsabilidad y subcontrató los servicios del taller de hojalatería Specialist Auto Body para atender los reclamos de los recurridos como parte de la garantía, sin la objeción de los recurridos.[15] A esos efectos, el recurrente pagó a Specialist Auto Body $3,733.00 por tales servicios de hojalatería pintura.[16]

---

[11] Anejo I-*Invoice* 2/12/21; Anejo II-*Invoice* 2/12/21 que hace referencia a la garantía; Anejo III-Factura 30/11/21; Anejo IV-Cheque número 354 de 21/04/22; Anejo V-copia de mensaje de texto de 15/09/21; Anejo VI-copia de mensaje de texto de 07/12/21; Anejo VII-copia de mensaje de texto de 14/12/21; Anejo VIII-Estimado de Grupo Scuderia Incorporado 20/01/21; Anejo IX-Evidencia de pago de 12/02/21; Anejo X-Estimado del Querellante de 12/10/21; Anejo XI-*Invoice* 1037098 de 28/01/22.

[12] Vista del 8 de febrero de 2024, minutos 17:43-18:37.

[13] Apéndice, pág. 73, determinación de hecho número 4.

[14] *Íd.*, pág. 74, determinación de hecho número 7.

[15] *Íd.*, determinaciones de hechos números 8, 9, 10, 11 y 12. Refiérase, además, al testimonio del Sr. Ángel Quiñones Ayala al ser contrainterrogado durante la vista del 2 de abril de 2024, minutos 9:27-9:30; y al testimonio del Sr. Alfonso Mora Claustra, Presidente de Grupo Scuderia Incorporado, vista del 2 de abril de 2024, minutos 46:00-46:42.

[16] Anejo IV, Apéndice, pág. 109.

Finalizado los trabajos de pintura, los recurridos nuevamente reclamaron su garantía al recurrente debido a que el color de la capota que trabajó Specialist Auto Body (subcontratista del recurrente) era distinto al del resto del vehículo.[17] Surge del testimonio directo del Sr. Alfonso Mora Laclaustra que, al acudir nuevamente ante Specialist Auto Body para reclamar la diferencia en el color de la pintura de la capota del vehículo de los recurridos, el taller de hojalatería se negó a recibir la unidad y a realizar la labor de reparación.[18] Ante ello, el recurrente intentó liberarse de responsabilidad y refirió a los recurridos a contactar directamente a Specialist Auto Body, por estos haber sido quienes realizaron la labor de pintura objeto de esta reclamación.[19]

Según relató durante su contrainterrogatorio, y luego a preguntas del juez administrativo, el Sr. Alfonso Mora Laclaustra ofreció verbalmente a los recurridos la alternativa de colocar el tratamiento protector a la capota luego de que Specialist Auto Body efectuó su labor de pintura.[20] Lo antes, y tal cual expuso en su Contestación a Querella, debido a que, a su entender, el color de la pintura puede variar dependiendo si es un área con o sin tratamiento de protección de pintura.[21] Sin embargo, al llamar nuevamente como testigo al Sr. Ángel Quiñones Ayala para declarar sobre este asunto, negó que el Sr. Alfonso Mora Laclaustra le hubiese ofrecido aplicar el tratamiento de protección de pintura sobre la capota.[22]

Debido a la postura que asumió el recurrente, los recurridos acudieron a otro taller de hojalatería (Garaje Gil) y realizaron con este último un trabajo dirigido a corregir la diferencia en color entre la capota y el resto del vehículo. A esos efectos, reclamaron al recurrente el monto pagado, a saber: $775.00 por la remoción del

---

[17] Refiérase al testimonio del Sr. Ángel Quiñones Ayala en el re directo durante la vista del 2 de abril de 2024, minutos 15:55-16:00.
[18] Vista del 2 de abril de 2024, minutos 52:58-54:18.
[19] Anejo VII, Apéndice pág. 112.
[20] Vista del 2 de abril de 2024, minutos 1:14:05-1:15:15; 1:24:07-1:24:35.
[21] Apéndice, págs. 14-15.
[22] Vista del 2 de abril de 2024, minutos 1:25:39-1:25:51.

plástico protector, más $1,371.61 por la pintura.[23]  Lo antes se desprende del estimado identificado como Anejo XI y del testimonio del Sr. Ángel Quiñones Ayala, quien declaró que el monto que surge del estimado corresponde al costo que pagó a dicho taller por la labor realizada para dejar la pintura del vehículo como estaba originalmente.[24]

Surge de lo antes expuesto que, los recurridos acudieron al recurrente para que aplicara a su vehículo Toyota Tundra un plástico protector de pintura "Paint protection film", trabajo que el recurrente garantizó por espacio de diez (10) años, sin establecer condiciones ni exclusiones. Al cabo de varios meses de otorgar el contrato de servicio, el Sr. Ángel Quiñones Ayala se percató de una laceración y corrosión en la capota de su vehículo. Al referir el asunto ante el recurrente, a modo de que le honrara la garantía, este último asumió su responsabilidad y subcontrató a Specialist Auto Body para reparar lo reclamado. Al delegar el referido trabajo a Specialist Auto Body, el recurrente optó por pagar a un tercero y no se liberó de su responsabilidad, por el contrario, y como parte de la garantía a la cual se obligó, responde ante cualquier incumplimiento del taller de hojalatería a quien voluntariamente delegó la labor de pintura en cuestión.

En su consecuencia, la agencia recurrida no incidió en su análisis y orden al recurrente de indemnizar a los recurridos por los daños sufridos, según lo dispone el Artículo 1158 del Código Civil de 2020, *supra*.  Lo antes, en la medida en que, el daño que reclamaron los recurridos surgió exclusivamente como consecuencia del incumplimiento del recurrente con la obligación pactada, daño que no hubiese ocurrido sin la existencia del contrato de servicio entre las partes. *Sanfeliz v. Jta. Dir. FirstBank, supra,* págs. 56-57. Fundamentado en lo anterior, resolvemos que, actuó correctamente el DACo al declarar con lugar la *Querella* de epígrafe

---

[23] *Íd.*, pág. 75, determinación de hecho número 14.
[24] Vista del 8 de febrero de 2024, minutos 32:04-33:33; 39:00-40:00.

y al ordenar al recurrente pagar a los recurridos $6,746.61. Los errores señalados no se cometieron.

**IV.**

Por las razones antes expuestas, confirmamos la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones